THOMAS F. MacDONALD & others *vs.* BOARD OF STREET COMMISSIONERS OF THE CITY OF BOSTON.

UNION SAVINGS BANK OF BOSTON *vs.* SAME.

Suffolk.    May 23, 1929. — July 18, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Boston*, Street commissioners.  *Way*, Public.  *Trust*, What constitutes. *Public Officer*.  *Deed*, Construction.

So long as the board of street commissioners of the city of Boston acts honestly, without abuse of discretion, within governing principles of law and the scope of the power, delegated to it by statute, to discontinue public ways, its decisions in that respect are not open to reëxamination or revision by the courts as to the expediency of its proceedings.
The owner of a private way in Boston called Lowell Place in 1879 conveyed it to the city by a deed, which was duly recorded, reciting that the grantors "are desirous that the said Lowell Place shall be laid out by the City of Boston as a public street," and, following the description, stating: "The described premises are to be used for the purposes of a public street of the City of Boston, and with the proposed grade thereof" as shown on a described plan. At the same time, the street commissioners passed an order entitled "Taking," which was in effect a taking of the land described by metes and bounds and a laying out of the same as a public way under the name of Tamworth Street and the establishing of its grade according to a designated

plan. In this taking the land was described as "belonging to the City of Boston and others." Tamworth Street then was laid out as a public way. An individual desiring to purchase the surrounding land and that included in the way for the purpose of erecting a building and to have the way discontinued, in 1929 petitioned the board of street commissioners for such discontinuance, and the board issued a notice stating that it was "of the opinion that . . . a public improvement should be made, consisting of the discontinuance as a highway, of Tamworth Street . . . that it intends to pass an order for making said improvements" and appointing a time and place "for a public hearing in the matter." In a suit in equity by ten taxable inhabitants under G. L. c. 40, § 53, no question of the propriety of the proceedings being raised, and there being no contention of fraud, bad faith, or corruption on the part of the defendants, it was *held*, that

(1) The circumstances and the words of the deed indicated as the purpose of the conveyance the laying out of a public street over the granted premises with all the incidents attaching to such a laying out, including the usual powers of a public board to relocate, alter, change the grade of and discontinue public streets;

(2) No trust was created;

(3) It must be assumed that the defendant board would approach a hearing, still to be held, with unbiased minds and a determination to act solely and singly for the welfare of the public and not for private interests; every presumption was to be indulged in favor of their honesty of purpose as public officers;

(4) The record disclosed no reason for intervention in equity.

A bank which owned property on a street into which Tamworth Street ran and opposite the intersection of the two was *held* to suffer by the discontinuance of Tamworth Street no special or peculiar damage differing in kind from that sustained by the general public, although its damage might be relatively greater in degree; and therefore not to have a right to maintain a suit in equity to enjoin action by the board of street commissioners.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on February 12, 1929, originally by ten taxable inhabitants of the city of Boston, and by order of court on that day transferred to the Superior Court for final disposition. In the Superior Court, a petition by Union Savings Bank of Boston for leave to intervene as a party plaintiff was allowed. Also a

BILL IN EQUITY, filed in the Superior Court on February 15, 1929.

Both bills are described in the opinion. The suits were heard together in the Superior Court by *Donahue*, J., who ordered the bills dismissed and reported the suits for determination by this court.

The cases were argued at the bar in May, 1929, before *Rugg*, C.J., *Crosby, Pierce, Sanderson,* & *Field*, JJ., and afterwards were submitted on briefs to all the Justices.

*C. S. Hill* & *F. D. Bonner*, for the plaintiffs MacDonald and others.

*H. V. Cunningham*, for the plaintiff Union Savings Bank.

*J. P. Lyons*, Assistant Corporation Counsel, for the defendants.

RUGG, C.J.    These are two suits in equity, one by eleven taxable inhabitants of the city of Boston, the other by a corporation, which also was allowed to intervene as a party in interest in the first suit.    The defendants are the individuals constituting the board of street commissioners of the city of Boston.    Although the first suit is not alleged in terms to be brought under G. L. c. 40, § 53, whereby jurisdiction in equity is conferred upon the court at the suit of not less than ten taxable inhabitants to restrain the unlawful exercise or abuse of the corporate power of a municipality if it or any of its officers or agents "are about to raise or expend money or incur obligations purporting to bind" the municipality for any object or in any manner not authorized by law, it is stated in the brief for the plaintiffs that it is so brought.    The court has no other jurisdiction to consider that case on its merits.    *Baldwin* v. *Wilbraham*, 140 Mass. 459.

Summarily stated, the allegations of the bill are as follows: For a considerable time the land on the easterly side of Tremont Street, in Boston, lying between Boylston Street and Lagrange Street, has been occupied by the Hotel Touraine. Tamworth Street, formerly Lowell Place, is situated directly east of the Hotel Touraine lot and extends from Boylston Street to Lagrange Street.    Land of the Union Savings Bank is on the southeasterly corner of Tremont Street and Lagrange Street abutting on Lagrange Street at its point of intersection with Tamworth Street.    Title to the land constituting Tamworth Street and comprising approximately forty-two hundred square feet was transferred to the city of Boston by the owners in 1879, the deed reciting that the grantors "are desirous that the said Lowell Place shall be

laid out by the City of Boston as a public street." Following the description in the deed are these words: "The described premises are to be used for the purposes of a public street of the City of Boston, and with the proposed grade thereof" as shown on a described plan. This was followed by a covenant on the part of the grantors to make no claim for damages growing out of the laying out of the granted premises as a public street and the establishment of the grade thereof, with other covenants directed to this end. The deed stated further that the conveyance and release are "made on condition that if any betterments are assessed upon estate" belonging to the grantors by reason of the laying out and construction of the street they shall be assumed and paid by the city. Thereafter the deed was duly recorded and Tamworth Street was laid out as a public way over the premises described in the deed. Simultaneously with the recording of this deed in 1880, the street commissioners, acting for the city of Boston, passed an order entitled "Taking," which was in effect a taking of the land described by metes and bounds and a laying out of the same as a public way under the name of Tamworth Street and the establishing of its grade according to a designated plan. In this taking the land was described as "belonging to the City of Boston and others."

Further allegations are that certain private persons for their own gain have formulated a plan to acquire the land now occupied by the Hotel Touraine and other parcels of land lying directly east of it abutting on the opposite side of Tamworth Street, and to acquire from the city of Boston or the owners the area now constituting Tamworth Street, for the purpose of erecting upon all these parcels a single, large, modern building, thus obliterating Tamworth Street; that contracts for the purchase of several parcels of land other than Tamworth Street have been made conditioned upon the discontinuance of Tamworth Street as a public way and the conveyance of the same from the city of Boston; that in execution of this plan the present owners of the premises abutting on Tamworth Street have filed a petition with the defendant street commissioners praying in substance

for the discontinuance of Tamworth Street as a public way; that notice in due form dated January 31, 1929, has issued on the petition wherein it is declared in substance that "this Board is of the opinion that . . . a public improvement should be made, consisting of the discontinuance as a highway, of Tamworth Street . . . that it intends to pass an order for making said improvements" and appointing a time and place "for a public hearing in the matter." There are further allegations of the public necessity and importance of Tamworth Street and the harm to the public that will arise from its discontinuance; that such discontinuance "will be *ultra vires* of the defendant street commissioners; that the said discontinuance is not only unnecessary but is distinctly prejudicial to the public safety, and is illegal as being a departure from the original grant and a direct repudiation of the public trust created in the said deed, and that the effect of such discontinuance will be to deprive the public of the city of Boston of that use and advantage intended to be given to said public under said deed. Your plaintiffs further allege that the intentions of said street commissioners as set forth in their notice and their express determination to discontinue said way as set forth in their said notice, and the act of discontinuance contemplated by them are *ultra vires* and illegal in that the defendants are not proceeding, and, so far as your plaintiffs are aware, are taking no steps whatever to proceed in accordance with the provisions of G. L. c. 40, § 15, and other laws in the premises made and provided." Final allegations assert the rights of the petitioners to the continuance of Tamworth Street as a public way, and that they have no other adequate remedy. The prayers of the bill are for preliminary and final injunctions to restrain the defendants from holding the hearing and from taking any steps to discontinue Tamworth Street.

The bill of the Union Savings Bank follows the same general lines but alleges the fair market value of the land included within Tamworth Street to be several hundred thousand dollars, and alleges also special and private interest, by reason of its ownership of land at the corner of Tremont

Street and Lagrange Street, to the free, unrestricted and continuous passage in Tamworth Street.

The cases were submitted on an agreed statement of facts which included in substance the allegations just summarized so far as they concern facts without the inferences, consequences, and assertions and conclusions of law there set forth. Additional agreed facts are that the defendants individually had knowledge of the proposed plan at the time of the filing of the petition before them as public officials, but that the matter had not been presented to the board officially except by the petition. Since its laying out in 1880, Tamworth Street has been used as a public way and in its immediate vicinity considerable business is carried on and places of amusement, recreation, refreshment and for large assemblages of people are located. The land comprised within the limits of Tamworth Street as laid out contains about forty-two hundred square feet and is of substantial value. It was also agreed that at the time the order of notice was issued by the defendants they were of the opinion that the discontinuance of Tamworth Street would be a public improvement and that the discontinuance of said street would not result in public injury; that in their opinion said Tamworth Street served no useful public utility; that it was a narrow street with a sidewalk of about two feet in width; that it was used but little for traffic purposes and that it was used largely for the parking of automobiles; that at the time of the bringing of these suits the defendants had not officially determined to discontinue the street although the members were of the opinion that its discontinuance would be beneficial to the public; that the order of January 31, 1929, was passed for the purpose of enabling the defendants to give a public hearing as required by statute so that all parties interested would appear before them and they would hear arguments on all points involved; that on account of the filing of these bills no such hearing has been held and no final decision reached. There are no allegations of fraud, bad faith, or corruption on the part of the defendants, and no agreed facts of that nature or inducing that inference.

An order was entered in each case for a final decree dis-

missing the bill with costs and at the request of the parties the cases were reserved for determination by this court.

No question is raised as to the form of relief sought. The cases are considered on their merits.

The board of street commissioners has extensive jurisdiction over highways in Boston and is clothed with power to lay out, relocate, alter, widen and discontinue such highways. St. 1906, c. 393, §§ 1, 2, as amended by St. 1913, c. 536, §§ 1, 2.  See St. 1870, c. 337.  It is not contended that the board may not commonly discontinue a highway after an adjudication that such improvement is required by public convenience.  The argument in behalf of the plaintiffs is that, on the facts and circumstances here disclosed, the discontinuance proposed is beyond the power of the board.

General power to discontinue a public way in Boston is vested in the defendants constituting a board of public officers.  In this particular there is no provision in the statutes authorizing the courts to revise the determination of the public board or to review the expediency of its proceedings.  Apart from controlling statute, courts will not undertake an examination of the wisdom of such determination.  *Commonwealth* v. *Roxbury*, 8 Mass. 457.  Responsibility for investigation, hearing and decision is reposed exclusively in the public board by the Legislature in the exercise of its constitutional right to delegate power.  So long as it acts honestly, without abuse of discretion, within the scope of the delegated power and governing principles of law, its decisions are not open to reëxamination by the courts. No violation of this principle is shown by the allegations of the bill, in the light of the agreed facts, calling for the interposition of a court of equity.  *Lowell* v. *Boston*, 111 Mass. 454, 463.  *Lockwood* v. *Portland*, (C.C.A.) 288 Fed. Rep. 480.  *Bellevue* v. *Bellevue Improvement Co.* 65 Neb. 52, 59. *Kean* v. *Elizabeth*, 25 Vroom, 462, 466.  *Coombs* v. *Atlantic City Railroad*, 96 N. J. Eq. 709, 710.  *Knapp, Stout & Co.* v. *St. Louis*, 153 Mo. 560.  *Tilly* v. *Mitchell & Lewis Co.* 121 Wis. 1.

The question whether relief should be granted on the ground that a trust was established for the benefit of the

public by the deed of 1879 from the owners of what is now Tamworth Street to the city of Boston has been argued by all parties. Whether that question is open in these proceedings has not been argued and need not be discussed. It is manifest that St. 1929, c. 126, which will become operative on the first of next September, cannot be invoked. The point presented by the arguments is considered because, since the decrees will be the same in any event, there is no objection to stating the substantive law which supports that result. *Commonwealth* v. *McNary*, 246 Mass. 46, 48, where earlier cases are collected. The deed recites that the grantors, being owners of land "upon and including a private way," desire that that private way, which constitutes the granted premises, be laid out as a public street at a specified grade. At the conclusion of the description that is stated to be the purpose for which the land is to be used and damages are released. Agreement by the grantee to assume the betterments, if any are assessed, is stated as a condition of the conveyance. No other condition is in the deed. No breach of that condition is shown. There are no words to the effect that the conveyance is upon a perpetual trust. If a trust had been intended, words indicative of that design reasonably might be expected in a conveyance affecting valuable real estate in Boston so recently as 1879. While no particular words are necessary to the creation of a trust, some words in connection with attendant factors must point to a trust or none is established. The circumstances of this conveyance, so far as here disclosed, do not import a trust. Those circumstances were that the abutting owners upon a private way, also owning the fee of that way, wanted it made a public street without expense to themselves. Manifest and immediate advantages would accrue to them from having it so converted into a public street without liability for any betterment assessment. They would be relieved of all liability touching the condition or use attaching to them as owners of the private way. They would be assured that its grade, surface and cleanliness would be maintained at public expense in a manner suitable for a highway. General and specific repairs and reconstruction when needed would be

made by public authorities at the cost of the city. It would be policed and protected as a public way. Other benefits might accrue. Contemporaneously with the record of the deed, the appropriate public board made a taking for highway purposes of the land thereby conveyed. If a conveyance upon trust had been intended, such taking would seem futile from the standpoint of the public welfare and might have affected the grantors. If no trust was designed, it is conceivable that such taking might be desirable. It is also quite conceivable that such taking would be incompatible with a conveyance in trust. These circumstances and the words of the deed indicate as the purpose of the conveyance the laying out of a public street over the granted premises with all the incidents attaching to such a laying out, including the usual powers of a public board to relocate, alter, change the grade of and discontinue public streets. This appears to be the intent of the parties to that deed, to give effect to which is the cardinal rule in the interpretation of such instruments. That purpose has been effectuated by the laying out of the public street in 1880 and the maintenance of it through the years that have passed since that time. The principle underlying cases like *Rawson* v. *Uxbridge*, 7 Allen, 125, and *Barker* v. *Barrows*, 138 Mass. 578, tends strongly to support the conclusion that no trust was here created. The case at bar thus is quite distinguishable from *Cary Library* v. *Bliss*, 151 Mass. 364; *Codman* v. *Crocker*, 203 Mass. 146; *Board of Commissioners* v. *Young*, 8 C.C.A. 27, and similar decisions where the words of the deed and the circumstances of the gift indicated a purpose to create a trust. Land may be granted upon a trust to maintain a highway or boulevard in perpetuity or upon specified valid conditions. An example of a careful conveyance with definite and enforceable restrictions is *Howe* v. *Lowell*, 171 Mass. 575. See also *Hemphill* v. *Boston*, 8 Cush. 195. There are references in the course of essential discussion in decisions to land conveyed to cities, towns and other governmental subdivisions in trust for various purposes for the benefit of the public. All such trusts when accepted must be sacredly observed and executed. *Higginson* v. *Treasurer & School House Commis-*

*sioners of Boston,* 212 Mass. 583, 584. *Wright* v. *Walcott,* 238 Mass. 432, 435. *Attorney General* v. *Lowell,* 246 Mass. 312, 319, 320, 321.

The defendants have not yet held the hearing required by the notice. Their preliminary and tentative expression of view that the discontinuance of Tamworth Street would be desirable is subject to change and is in no respect binding upon them at the hearing. They must as public officers exercising a *quasi*-judicial function approach that hearing with an unbiased mind and determination to act solely and singly for the welfare of the public and not for private interests. They must adhere strictly not only to the letter of the enabling statutes but also to the high standard of conscience demanded of public officials. The interest of the city in Tamworth Street constitutes public property. It can be dealt with only on that footing. It cannot be given away or disposed of in any way except for the public welfare. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 50, and cases there collected. *Opinion of the Justices,* 261 Mass. 556, 611, 612. *Coker* v. *Atlanta, Knoxville & Northern Railway,* 123 Ga. 483.

Every presumption is indulged in favor of the honesty of purpose of the defendants as public officers. *Slack* v. *Inspector of Buildings of Wellesley,* 262 Mass. 404, 407. The principle that in mandamus, when a person has manifested a clear determination to disobey the law, the court is not obliged to wait until the evil is done, *Attorney General* v. *Boston,* 123 Mass. 460, 474, has no relevancy to the facts of the case at bar. This record discloses no reason for intervention in equity at this stage. Merely because parties regard anticipatory proceedings in equity more expeditious, is no reason for present intervention in the face of settled principles. Manifestly no intimation now can be made whether certiorari or other proceeding will lie after decision by the defendants.

The Union Savings Bank, in respect to its individual suit upon the agreed facts, will suffer by the discontinuance of Tamworth Street no special or peculiar damage differing in kind from that sustained by the general public. It may be

relatively greater in degree. That would not give this plaintiff distinctive standing. It would not be entitled to recover compensation therefor and it shows no ground for equitable relief. *Hyde* v. *Fall River,* 189 Mass. 439, 440.

Every argument urged in behalf of the plaintiffs has been considered. They need not be discussed at greater length. No argument has been addressed to us and no decision is made touching the effect of G. L. c. 40, § 15. The result is that in each case the order for final decree dismissing the bill with costs is

*Affirmed.*