LEWIS P. KAUFMAN, trustee, *vs.* FEDERAL NATIONAL BANK OF BOSTON.

FEDERAL NATIONAL BANK OF BOSTON *vs.* LEWIS P. KAUFMAN, trustee.

Suffolk.   March 7, 8, 1934. — June 25, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, & LUMMUS, JJ.

*Mortgage,* Of real estate: what constitutes, validity, assignment.  *Bills and Notes,* Validity, Indorsement.

At the hearing in the Land Court of a petition by a bank for registration of the title to certain land, the following facts appeared:  the land which was the locus formerly had been owned, subject to a mortgage to the bank, by an individual who also held title to other land as trustee under a declaration of trust which established an ordinary real estate operating trust with no designated beneficiary.  Upon the bank's requiring further security for loans previously made to him as trustee, he executed a note to himself as trustee, or order, in a larger sum than the former mortgage note to the bank, a mortgage of the locus to himself as trustee securing that larger note, and an assignment as trustee to the bank of that mortgage, which assignment was under seal and in the statutory form, and as trustee indorsed the note.  He then delivered the note, mortgage and assignment, with other notes and mortgages, to the bank as collateral security for a new loan to him as trustee; and the prior mortgage of the locus to the bank was discharged. The mortgage and assignment were recorded.   The condition of the mortgage having been broken, the bank foreclosed by sale under the power of sale and became the purchaser of the locus.   Thereafter, the former owner for a consideration conveyed the locus to one who also sought registration of title and in whose name the Land Court ordered that registration be made.  Upon exceptions by the bank, it was *held,* that

(1) While the note given by the former owner to himself as trustee was of no effect at its inception, it became valid and effective when it was indorsed and delivered to the bank;

(2) Although the mortgage securing such note was ineffective and

the assignment thereof, treated as such, therefore was also ineffective, nevertheless, in the circumstances the assignment contained all the essentials of a mortgage by the former owner and should be treated as such;

(3) Under the power of sale, thus incorporated by reference to the ineffective mortgage into the assignment treated as an effective mortgage, the bank lawfully foreclosed and obtained a good legal and equitable title, proper for registration;

(4) The subsequent deed by the former owner conveyed no title;

(5) The decision by the Land Court must be reversed and title ordered registered in the bank.

Two PETITIONS for registration of the title to land, filed in the Land Court on August 31 and October 11, 1933, respectively.

The petitions were heard by *Smith*, J. Material facts found by him are stated in the opinion. He ordered title registered in the name of Lewis P. Kaufman, trustee. The Federal National Bank of Boston alleged exceptions.

*J. L. Hannan*, (*J. VdeP. Phelan* with him,) for Federal National Bank of Boston.

*J. Spiegel*, (*J. Goldberg* with him,) for Kaufman, trustee.

LUMMUS, J. These are separate petitions, brought in the Land Court by different and antagonistic petitioners, for the registration of title to the same land. The Land Court ordered registration in the name of Lewis P. Kaufman as trustee, upon his petition. The contestant in that petition and the petitioner in the other, the Federal National Bank of Boston, alleged exceptions.

On July 28, 1930, one Celia Green, a widow, was the trustee of the Back Bay Real Estate Trust named in a recorded declaration of trust relating, not to the locus, but to other specified real estate and "any and all lands, leases and mortgages on real estate that may be conveyed or assigned to me as Trustee." The trust so declared was described by the Land Court as "an ordinary real estate operating trust without naming any original beneficiaries, but reserving or creating power in the trustee to issue one hundred shares to shareholders, who would then become beneficiaries." No shares were ever issued, and no *cestui que trust* ever existed. In truth, Celia Green was the sole

owner. *Greenwood Lake & Port Jervis Railroad* v. *New York & Greenwood Lake Railroad,* 134 N. Y. 435.

In the operation of this so called trust, Celia Green had become indebted to the Federal National Bank of Boston to the amount of $26,750, of which $6,000 was secured by a mortgage upon the locus, given by her to the bank. This constituted the only encumbrance upon the locus. The title to the locus stood in the name of Celia Green, free from trust.

On July 28, 1930, Celia Green went to the bank and saw its then president. He asked to have the mortgage on the locus increased to $25,000, as security for the debt. She signed as trustee a new note to the bank for $26,750, reciting that she had deposited as collateral security therefor three mortgage notes secured respectively by three mortgages on different lots of land, one of which was the locus. The president directed the attorney for the bank to prepare a mortgage upon the locus for $25,000 from Celia Green as an individual to herself as such trustee, and an assignment of that mortgage from her as such trustee to the bank. The documents were drawn, executed and delivered accordingly, and the mortgage and assignment were recorded on July 29, 1930. The assignment was in the statutory form appended to G. L. (Ter. Ed.) c. 183. Accompanying the mortgage was the usual mortgage note for $25,000, signed by Celia Green and payable to Celia Green, Trustee of Back Bay Real Estate Trust under a specified declaration of trust, or order. This note was delivered to the bank with an indorsement reading, "Waiving demand and notice, Celia Green Trustee of Back Bay Real Estate Trust." As a part of the transaction the bank discharged the earlier mortgage securing the amount of $6,000.

On June 6, 1933, the bank by its receiver foreclosed the $25,000 mortgage by sale, and bought in the locus, giving to itself, under the power of sale in the mortgage, a foreclosure deed which was duly recorded. It now claims a title proper for registration.

After all this, on August 3, 1933, Celia Green gave to the petitioner Kaufman, as trustee under a recorded decla-

ration of trust in favor of his married daughter and her child, a quitclaim deed of the locus, which mentioned no mortgage. The consideration for this deed, $2,000, was furnished by his son-in-law, an attorney at law, who was the real purchaser. The latter caused the title to be examined, and acquired actual knowledge of the terms of all the material recorded instruments, before paying the consideration or taking the deed. That knowledge is of course attributable to Kaufman also. The son-in-law in his testimony estimated the value of the locus as "not over $7,000." It was decided to pay $2,000 for it and "to ignore the mortgage assigned to the bank as a void transaction."

The mortgage was indeed void. Celia Green could not owe money to herself, nor hold a valid promissory note against herself, nor give herself a valid mortgage to secure a note in which she was both maker and payee. *Gorham's Admr.* v. *Meacham's Admr.* 63 Vt. 231. *Cameron* v. *Steves*, 9 New Brun. 141. The common practice of drawing a negotiable instrument to one's own order is supported on the theory that the instrument acquires vitality when indorsed. *Navin* v. *McCarthy*, 240 Mass. 447. *Roby* v. *Phelon*, 118 Mass. 541, 542. *Foley* v. *Hardy*, 119 Kans. 183, 42 Am. L. R. 1064, and note. Since the mortgage was void, Celia Green retained an unencumbered title in fee simple and full power to create a valid legal or equitable mortgage in favor of the bank or any other mortgagee.

When Celia Green indorsed and delivered the mortgage note, it became valid in the hands of the bank. *Navin* v. *McCarthy*, 240 Mass. 447. She purported to assign the void mortgage to the bank by an instrument under seal, with the intention of making the bank the holder of a valid mortgage upon the locus in the sum of $25,000. If construed as an assignment, the instrument would be ineffective, for there was no valid mortgage which could pass by assignment. But for centuries, where a deed of real estate shows by its language that it was intended to pass title by one form of conveyance, by which however title could not pass, courts have made the deed effective by

construing it as a deed of some other form, notwithstanding the inappropriateness of the language. The general intent to convey overrides any intent to employ an ineffective form. *Hunt* v. *Hunt*, 14 Pick. 374, 380. *West* v. *West*, 155 Mass. 317, 320. *Carr* v. *Richardson*, 157 Mass. 576, 578. *Crossing* v. *Scudamore*, 1 Vent. 137, 141. *Roe* v. *Tranmer*, 2 Wils. 75. See also *Bassett* v. *Daniels*, 136 Mass. 547, 549; *Jamaica Pond Aqueduct Corp.* v. *Chandler*, 9 Allen, 159, 167; *Packard* v. *Old Colony Railroad*, 168 Mass. 92, 96; *Simonds* v. *Simonds*, 199 Mass. 552; *Ames* v. *Chandler*, 265 Mass. 428, 432. Thus an instrument in the form of a deed of real estate has been held to pass a mortgage held by the grantor on the real estate described. *Hunt* v. *Hunt*, 14 Pick. 374. *Freeman* v. *M'Gaw*, 15 Pick. 82. *Ruggles* v. *Barton*, 13 Gray, 506. *Southwick* v. *Atlantic Fire & Marine Ins. Co.* 133 Mass. 457, 458. *Dearnaley* v. *Chase*, 136 Mass. 288. *Harlow Realty Co.* v. *Cotter*, 284 Mass. 68, 72–73. For another example, the common law gave effect to a deed of release and quitclaim only when the releasee already had seisin or possession of the land, and this rule was utilized in the mode of conveyance called lease and release. Williams, Real Property, (24th ed.) 225, 227, *et seq.* Holdsworth, Historical Introduction to the Land Law, 293–295. Nevertheless, this court held long ago, before the enactment of a declaratory statute on the subject (Rev. Sts. c. 59, § 5; G. L. [Ter. Ed.] c. 183, § 2; *Connolley, petitioner*, 168 Mass. 201, 203), that the common deed of release and quitclaim to a person having no existing seisin or possession will be supported by considering it as a deed of some other kind. *Russell* v. *Coffin*, 8 Pick. 143.

Upon this principle, can the purported assignment of mortgage be construed as a mortgage, in order to carry out the undoubted intent to make the bank the holder of a valid mortgage for $25,000? The purported assignment bore a seal. The signature of Celia Green as trustee was as effective to convey her individual property as though she had signed simply her name. At law, the official and

individual capacities of a trustee are not separated. A trustee simply owns the property, subject to such equitable rights of the *cestui* as may exist. *Davis* v. *Charles River Branch Railroad*, 11 Cush. 506. *Fiske* v. *Eldridge*, 12 Gray, 474. *Fitzpatrick* v. *Fitzgerald*, 13 Gray, 400. *Essex Co.* v. *Durant*, 14 Gray, 447. *Larson* v. *Sylvester*, 282 Mass. 352, 357 *et seq. Alfano* v. *Donnelly*, 285 Mass. 554. *Robinson* v. *Pierce*, 118 Ala. 273. The operative word of conveyance in the purported assignment, "assign," is sufficient to convey a legal estate in land. *Wainwright* v. *Sawyer*, 150 Mass. 168. *Hutchins* v. *Carleton*, 19 N. H. 487, 515. That must be so, for it is sufficient to convey all the interest of a mortgagee (G. L. [Ter. Ed.] c. 183, §§ 8, 28*), and that interest for many purposes is deemed real estate. *Harlow Realty Co.* v. *Cotter*, 284 Mass. 68. *Gould* v. *Newman*, 6 Mass. 239, 241. *Young* v. *Miller*, 6 Gray, 152. *Adams* v. *Parker*, 12 Gray, 53. *Barnes* v. *Boardman*, 149 Mass. 106, 115. The purported assignment conveyed the "mortgage," and that word, not only by statute (G. L. [Ter. Ed.] c. 183, § 8, Appendix (9)) but also at common law (*Hills* v. *Eliot*, 12 Mass. 26, 30), includes the interest in the land which a mortgagee holds. No words of inheritance were necessary in order to convey a fee. G. L. (Ter. Ed.) c. 183, § 13.

Thus it appears that the purported assignment contained all the essentials of a mortgage deed of land. Construed in the light of the general intent with which it was made, it conveyed to the bank the fee in the locus so as to vest in the bank the same interest as mortgagee as was set forth in the invalid mortgage to which reference was had. The purported assignment was itself a mortgage. Under the power of sale, thus incorporated into the effective mortgage by reference to the invalid mortgage, the bank lawfully foreclosed and obtained a good legal and equitable title, proper for registration. The supposed defect in title, upon which Kaufman relied, did not exist. We need not

---

* For convenience, the Tercentenary Edition of the General Laws is cited in this opinion; but the provisions cited were in force in 1930 when the instruments under construction were made and recorded.

consider whether, had the title of the bank been defective at law, the transaction could have been supported as an equitable mortgage to the bank.

The exceptions of the bank are sustained, and final decrees are to be entered, dismissing the petition of Kaufman and registering title in the bank.   G. L. (Ter. Ed.) c. 231, §§ 124, 142.   *Silverstein* v. *Saster*, 285 Mass. 453, 458, and cases cited.

*Ordered accordingly.*