PAUL M. SULLIVAN & others[1] *vs.* ROMAN CATHOLIC ARCHBISHOP OF BOSTON & others.[2]

Middlesex. May 6, 1975. — June 27, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Trust,* What constitutes, Charitable. *Charity. Devise and Legacy,* Charitable gift, Acceptance or rejection by beneficiary.

Under the will of a testator the major portion of whose estate consisted of real property held for investment, a devise of "my farm" to the Roman Catholic Archbishop of Boston "to be devoted to such charitable uses as he may select" was a valid gift in trust to charity and evinced no intent that the land itself must be used for chari-

---

[1] Dr. Garrett L. Sullivan, Arthur F. Sullivan, John J. Sullivan and Edward F. Sullivan.

[2] Chancellor of the Archdiocese of Boston and Attorney General.

table purposes, and sale of the land was not prohibited by the will [256-258]; there was no merit in contentions by the issue of one devised the land if the Archbishop did "not accept" the gift that his express acceptance thereof by letter was vitiated by inaction in the five years between the testator's death and his own death in putting the land to charitable use, by becoming involved in rezoning of the land, or by entering into a written agreement to sell it [258-259].

BILL IN EQUITY filed in the Land Court on February 8, 1973.

The suit was heard by *Randall, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*William A. Ryan (William J. Lee & Maurice F. Joyce* with him) for the plaintiffs.

*John J. Gartland (Francis V. Hanify* with him) for the Roman Catholic Archbishop of Boston & another.

*Timothy J. Lane,* Assistant Attorney General, for the Attorney General.

TAURO, C.J. This suit for declaratory relief was brought in the Land Court pursuant to G. L. c. 185, § 1 (k), and c. 231A, to determine what interest, if any, the plaintiffs have in a Billerica farm which was owned by the testator, Edward T. P. Graham, at the time of his death. This land was devised under cl. 3 of Graham's will to "Archbishop Richard J. Cushing of Boston, Massachusetts, to be devoted to such ·charitable uses as he may select. If, however, he will not accept this devise, then and in that event, I give and devise the said farm to my cousin, Garrett L. Sullivan of said Cambridge for his own use in fee simple." A Land Court judge ruled that the plaintiffs have no right, title or interest in the Billerica farm, and they appeal from that judgment. We affirm.

The judge found the following facts: Garrett L. Sullivan, the testator's cousin named in cl. 3 of the will, died on October 27, 1962, and the plaintiffs herein are his issue. The testator died on September 3, 1964. His will

contained several specific gifts and a residuary gift to a cousin, Gertrude Sullivan.

An inventory filed by the executor on June 14, 1965, listed real property valued at over $575,000, including the farm in question valued at $145,000 and personal property valued at approximately $51,000.

On November 2, 1964, a letter was sent to the Old Colony Trust Company, signed by Richard Cardinal Cushing, Archbishop of Boston, which read in pertinent part as follows: "I write concerning the last will and testament of Edward T. P. Graham of Cambridge of which the Old Colony Trust Company is executor. In particular, I wish to state that I, Richard J. Cushing, Archbishop of Boston, will accept the farm in Billerica, Mass., bequeathed to me in Clause three (3) of afore-mentioned will. I shall be grateful of due notice of transfer of this property to Archbishop of Boston."

On May 12, 1965, an action was commenced against Old Colony Trust Company, as executor of the testator's will, for personal injuries in tort with an ad damnum of $500,000. The case was tried in Superior Court and was eventually decided by this court, *Stokes* v. *Old Colony Trust Co.* 354 Mass. 776 (1968), where a directed verdict for the defendant was upheld.

Early in 1969 the town clerk of Billerica sent a letter to Cardinal Cushing regarding the possibility of rezoning the Billerica farm from rural residential to industrial district zoning. Cardinal Cushing answered, stating that he would send a representative to confer with the industrial committee of the town regarding the matter. The Cardinal's representative attended a meeting at which the committee decided to sponsor a rezoning article for the town meeting warrant. The committee presented the article on March 8, 1969, and the town voted unanimously to rezone the "farm" to industrial district land. Prior to this vote, Cardinal Cushing entered into a written purchase and sale agreement with

Graham Associates, Inc., to sell the property for $175,000.

Richard Cardinal Cushing died on November 29, 1970. His will, of which the Chancellor of the Roman Catholic Archdiocese of Boston was named executor, was allowed for probate on December 10, 1970. Under the terms of the will, all property in the Cardinal's name, with the exception of a few personal belongings, was left to the Roman Catholic Archbishop of Boston, a corporation sole. G. L. c. 68, § 1.

The land devised to the Archbishop was taken on September 30, 1971, by the collector of taxes for the town of Billerica for nonpayment of taxes for the years 1969 and 1970.

We note at the outset that the devise of the farm to "Archbishop Richard J. Cushing . . . to be devoted to such charitable uses as he may select" is a valid gift in trust for charity. *Gill* v. *Attorney Gen.* 197 Mass. 232, 236 (1908). See *Kirwin* v. *Attorney Gen.* 275 Mass. 34, 40-41 (1931). The fact that the words "in trust" do not appear is immaterial, as the clear object of the gift was a trust for charitable purposes. *White* v. *Ditson,* 140 Mass. 351, 352-353 (1885). See *Reilly* v. *McGowan,* 267 Mass. 268, 269-270 (1929). See also *Carpenter* v. *Suffolk Franklin Sav. Bank,* 362 Mass. 770, 776-777 (1973).

The first question presented is whether this gift was ever accepted by the Cardinal. It is well settled that acceptance of a gift is presumed unless a clear intent to disclaim it is demonstrated. *Stebbins* v. *Lathrop,* 4 Pick. 33, 43 (1826). *Daley* v. *Daley,* 300 Mass. 17, 22 (1938). *Daley* v. *Daley,* 308 Mass. 293, 299 (1941). *Pepperell* v. *Whipple,* 327 Mass. 688, 692 (1951). *Mackey* v. *Bowen,* 332 Mass. 167, 170 (1955). Here, the application of the presumption of acceptance is not necessary, as the Cardinal expressly accepted the gift by his letter to the executor. His mention of the will and cl. 3 thereof in his letter indicated a familiarity with the terms of the

gift, and the letter must thus be construed as an expression of willingness to accept and manage the trust in the manner designated by the testator. *City Bank Farmers Trust Co.* v. *Carpenter,* 319 Mass. 78, 80-81 (1946).

The plaintiffs argue, however, that the Cardinal's apparent acceptance was in fact no acceptance at all because it was based on an incorrect premise, namely, that the land could be sold and the proceeds used for charity. They contend that the land itself must be devoted to charitable purposes, and that the Cardinal's misunderstanding of this requirement vitiates any acceptance he may have attempted. We disagree.

The intent of the testator governs the interpretation of his will. See, e.g., *Binney* v. *Attorney Gen.* 259 Mass. 539, 541 (1927). "The intent of the creator of . . . [a] trust is to be ascertained from a study of the instrument as a whole in the light of the circumstances attending its execution. Search should be made for a general plan, presumably designed to express a consistent and harmonious purpose." *Jewett* v. *Brown,* 319 Mass. 243, 248 (1946). In the instant case, the use of the words "my farm" to describe the vacant Billerica land must be viewed in the context of the testator's total holdings and dispositions. The testator was an architect and the major portion of his estate consisted of real property held for investment. Each of his devises began, "I give and devise my land," or "my farm." The use of the word "my" indicated mere possession, and not sentimental attachment to the property in question.[3] The testator here held land as others hold money, stocks or bonds. His gift of the land, when viewed in this light, evinces no intent that the land itself be used for charitable purposes.

---

[3] This case is unlike *Edwards* v. *Packard,* 129 Maine 74 (1930), cited by the petitioners. There, the testator was shown to have had a clear sentimental attachment to the land, which had been her home, and which she left for use as a memorial to her and her family. No such factors are present in the instant case.

The testator's will should not be reconstructed in order to impose additional conditions or limitations not clearly found in the words themselves. *Mackey* v. *Bowen*, 332 Mass. 167, 170 (1955). It follows, then, by implication that no prohibition against sale of the property was imposed on the trustee. *Smith* v. *Haynes*, 202 Mass. 531, 535 (1909). See *Ford* v. *Rockland Trust Co.* 331 Mass. 25, 28 (1954). See also Restatement 2d: Trusts, §§ 167, 399 (p) (1959).

There is no merit to the plaintiffs' further contention that, even assuming that the Cardinal accepted the devise, his inaction in putting the farm to charitable use and his later action in agreeing to sell the farm were inconsistent with acceptance and constituted a disclaimer or renunciation of the gift. We have already held that the Cardinal was not required to use the land itself for charitable purposes. Thus, his participation in the rezoning of the land and his agreement to sell it were not inconsistent with acceptance.

The fact that the Cardinal did not devote the property or its proceeds to charitable use in the five years between the testator's death and his own does not indicate a renunciation of the gift. To be effective, "a disclaimer or renunciation must be clear and unequivocal." *Pepperell* v. *Whipple*, 327 Mass. 688, 692 (1951). See, e.g., *Daley* v. *Daley*, 308 Mass. 293, 300 (1941); *Garfield* v. *White*, 326 Mass. 20, 27 (1950); *Second Bank-State St. Trust Co.* v. *Yale Univ. Alumni Fund*, 338 Mass. 520, 524 (1959). While it is questionable whether mere delay could ever meet this exacting standard, see *Bradway* v. *Shattuck*, 325 Mass. 168, 172 (1950); *Davenport* v. *Attorney Gen.* 361 Mass. 372, 377 (1972), in this case there is a valid explanation for the Cardinal's inaction. From May 12, 1965, until December 16, 1968, an action of tort was pending against the executor of the estate which, if successful, might have required the sale of all or part of the testator's real estate to satisfy an execution and thus have made the farm unavailable to the Cardinal. Im-

mediately after this litigation was terminated, the Cardinal became involved in the rezoning of the property, in a manner which he might reasonably have believed would increase the price he could command on a subsequent sale. He then entered into a purchase and sale agreement, but died shortly thereafter. Thus, his failure to devote the property to charitable use during his lifetime did not constitute a renunciation or disclaimer of the trust. On the contrary, his actions in the circumstances were reasonable and prudent.

Having determined that the Cardinal accepted the devise and did not thereafter renounce or disclaim it, we conclude that the plaintiffs have no right, title or interest in the property in question. We find it inappropriate at this time to reach other issues addressed by the parties. The current state of title to the farm can be determined if and when necessary in appropriate proceedings.

*Judgment affirmed.*