ARTHUR C. HILLMAN & others[1] *vs*. ROMAN CATHOLIC BISHOP OF FALL RIVER & others.[2]

Bristol. January 22, 1987. — June 1, 1987.

Present: PERRETTA, CUTTER, & KASS, JJ.

*Trust,* What constitutes, Creation, Charitable trust. *Charity. Real Property,* Deed.

Language in a deed to a certain parcel of land given, without consideration, to the Roman Catholic Bishop of Fall River, stating, "We . . . release to the . . . Bishop . . . for the use of St. Mary's Parish for educational, religious or recreational purposes, all our right, title, and interest in the land," constituted a grant to the Bishop for general charitable purposes and, furthermore, the words "for the use of St. Mary's Parish," without more, did not establish a limitation on the estate granted; consequently, despite the contention that, since the land had been given for the purpose of building a school and the school had subsequently been closed and the land sold, a resulting trust arose in favor of the grantors and their heirs, it was proper for the Bishop to sell the land and use the proceeds for the designated charity. [243-245]

CIVIL ACTION commenced in the Land Court Department on April 11, 1985.

The case was heard by *Robert V. Cauchon*, J.

*Erik Lund* (*Samuel Zaharoff* with him) for the plaintiffs.

*Raymond J. Brassard* (*Mary B. Freeley* with him) for Broad Street Construction, Inc., & others.

---

[1] Virginia E. Hillman and Ellen C. Hillman.

[2] The complaint also named as defendants the Attorney General of the Commonwealth of Massachusetts, the individuals who initially purchased the locus from the Bishop, the developer of the condominium (together with its president and treasurer), the bank involved in financing the purchase of the locus, twenty-seven individual owners of the condominium units, and four banks involved in financing the purchases of the individual condominium units.

*Edward B. Hanify (Frederic J. Torphy* with him) for Roman
Catholic Bishop of Fall River.

KASS, J. In 1951, four members of the Hillman family,
without consideration, gave a release deed to the Roman Cath-
olic Bishop of Fall River (Bishop) of a seven and one-half acre
parcel of land in North Attleborough. The deed read: "We . . .
release to the . . . Bishop . . . for the use of St. Mary's Parish
for educational, religious or recreational purposes, all our right,
title, and interest in the land. . . ." The question on appeal is
whether that language and circumstances attending the convey-
ance in 1951 impressed a charitable trust limited to specific
charitable purposes upon the Bishop's title.

At the time of its conveyance to the Bishop, the locus was
regarded by the Hillmans (Oscar Hillman and his three sons,
of whom Arthur is the sole survivor) as something of an alba-
tross. So long as St. Mary's parish school remained open, the
locus served as a playground. In 1981, the school closed, and
the locus was once again an albatross, this time to the Bishop.
He sold the property on March 29, 1984, for $59,000 to real
estate entrepreneurs who shortly thereafter resold the locus to
the defendant Broad Street Construction, Inc., for $250,000.
The albatross had turned into a swan. The swan has undergone
a further metamorphosis into a condominium.

The Hillman position is that the purpose of the 1951 con-
veyance was to provide land on which the Bishop could build
a Catholic school and that the conveyance, therefore, was a
limited charitable gift in trust. Upon failure of that trust, the
plaintiffs say, a resulting trust arose in their favor as to all
owners of the locus with knowledge of the breach of trust.
See, e.g., *Selectmen of Provincetown* v. *Attorney Gen.,* 15
Mass. App. Ct. 639, 648 (1983). The plaintiffs concede that,
if the gift in 1951 was made with a general charitable intent,
their case is defeated. A judge of the Land Court ruled that the
1951 deal conveyed a fee simple and imposed no charitable trust,
i.e., the 1951 gift was made with a general charitable intent.[3]

_____

[3] A gift with a general charitable intent, of course, imposes a trust of a
sort in the sense that the grantee may not use the assets for private, personal

See *Sullivan* v. *Roman Catholic Archbishop of Boston,* 368 Mass. 253, 257 (1975). We affirm.

Quite correctly the judge construed the instrument of conveyance by considering its language as illuminated by the circumstances attendant upon its drafting and delivery. See *Bass River Sav. Bank.* v. *Nickerson,* 303 Mass. 332, 334-335 (1939); *Groden* v. *Kelley,* 382 Mass. 333, 335 (1981); *Harrison* v. *Marcus,* 396 Mass. 424, 429 (1985). The principal source of evidence about attendant circumstances was Arthur Hillman, to whose testimony the judge gave little weight because, as the judge found, his memory was "demonstrably lacking." Questions of credibility are quintessentially within the province of the trial judge. *Matsushita Elec. Corp. of America* v. *Sonus Corp.,* 362 Mass. 246, 253-254 (1972); *Wang Labs., Inc.* v. *Docktor Pet Centers, Inc.,* 12 Mass. App. Ct. 213, 220 (1981). Compare *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct. 304, 310 (1981). The judge's finding that the Hillmans did not in 1951 intend a restriction beyond the use of the land for the general purposes of St. Mary's parish is not clearly erroneous and was solidly supported by the record. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974); *Building Inspector of Lancaster* v. *Sanderson,* 372 Mass. 157, 159-160 (1977); *C.C. & T. Constr. Co.* v. *Coleman Bros. Corp.,* 8 Mass. App. Ct. 133, 135 (1979). Contrary to the plaintiffs' suggestion, the judge did not make findings which used his disbelief of Arthur Hillman's testimony as proof of facts to

purposes; the assets must be used for charitable purposes consistent with those of the designated charity. See, as illustrative cases, *McNeilly* v. *First Presbyterian Church,* 243 Mass. 331, 338-339 (1923); *Greek Orthodox Community* v. *Malicourtis,* 267 Mass. 472, 480-481 (1929); *Smith* v. *Livermore,* 298 Mass. 223, 236 (1937); *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 723-724 (1943); *Attorney Gen.* v. *Olson,* 346 Mass. 190, 196 (1963). For an example of a restricted purpose, see *Newhall* v. *Second Church & Soc. of Boston,* 349 Mass. 493, 499 (1965). See, for a delightful discussion of the subject, 4 Scott, Trusts § 348 (3d ed. 1967). There is no restriction upon a gift with a general charitable intent as to the manner in which the charity may be served. The asset held, for example, may be sold and the proceeds applied to purposes of the charity, as here for church repairs. What the trial judge meant, therefore, when he ruled there was no charitable trust, was that there was not an imposition of a trust with a specific charitable purpose.

the contrary. Cf. *Levine* v. *Amber Mfg. Corp.*, 6 Mass. App. Ct. 840, 841 (1978).

In two respects, the language of the 1951 deed is inconsistent with the grant of a title limited to a specific charitable purpose. First, the ordinary consequence of a release covenant in a deed is to convey a fee simple. *Kaufman* v. *Federal Natl. Bank*, 287 Mass. 97, 101 (1934). Park & Park, Real Estate Law §§ 12-13 (2d ed. 1981). See also G. L. c. 183, Appendix form (4). Second, the words "for the use of St. Mary's Parish," without more, do not establish a limitation on the estate granted. *MacDonald* v. *Street Commrs. of Boston*, 268 Mass. 288, 291, 295 (1929) ("for the purposes of a public street"). *Loomis* v. *Boston*, 331 Mass. 129, 130, 132 (1954) ("for the purposes of a public park"). *Opinion of the Justices*, 369 Mass. 979, 981 n.4, 985 (1975) ("The premises hereby conveyed are to be used . . . as a part of a Public Park and Playground now in process of development").

No magical incantation, e.g., "in trust," is required to create a trust. *White* v. *Ditson*, 140 Mass. 351, 352-353 (1885). *Sullivan* v. *Roman Catholic Archbishop of Boston*, 368 Mass. at 256. *Selectmen of Provincetown* v. *Attorney Gen.*, 15 Mass. App. Ct. at 642-643. Restatement (Second) of Trusts § 351 comment b (1959). To create a charitable trust limited to specific charitable purposes, however, requires a more definite expression of intention in the way of granting language or attendant circumstances than here appears. See *MacDonald* v. *Street Commrs. of Boston*, 268 Mass. at 295. An example of sufficiently definitive language appears in *Salem* v. *Attorney Gen.*, 344 Mass. 626, 627 (1962): " 'to the City of Salem to be used forever as Public Grounds for the benefit and enjoyment of the citizens of said City, under such regulations as may seem best for the proper care of the same . . .' ." See also *Newhall* v. *Second Church & Soc. of Boston*, 349 Mass. 493, 496 (1965). See and compare *Russell* v. *Russell*, 18 Mass. App. Ct. 957, 959 (1984). The judge was warranted, on the record made before him, in concluding that the grant to the Bishop (who is a corporation sole) was for general charitable purposes and that the phrase "for the use of St. Mary's Parish

for educational, religious or recreational purposes" was inserted to differentiate the grant as a gift to benefit St. Mary's in particular from a gift to the Bishop (i.e., the entire Fall River diocese) in general. The charitable asset given, land, could be turned into another form of asset more useable by the designated charity, viz., cash. See *Sullivan* v. *Roman Catholic Archbishop of Boston,* 368 Mass. at 258-259. It is uncontroverted that the cash so generated was applied for the benefit of St. Mary's.

That the Bishop knew that prospective buyers were concerned about the state of the title to the locus because of the words of grant did not constitute an admission by the Bishop that he did not foresee a fee simple absolute. Cf. *Abbott* v. *Walker,* 204 Mass. 71, 73 (1910). The Bishop, as we know from the record, was not without legal advice, and it did not require an exceptionally clairvoyant conveyancer to foresee that purchase of the locus from the Bishop might carry with it purchase of a law suit.

*Judgment affirmed.*