Sergio D. AGUILAR and Xiomara Janet Aguilar, Debtors.

Joseph Braunstein, Chapter 7 Trustee, Plaintiff–Appellant,

v.

Jason Dexter, Mortgage Electronic Registration Systems, Inc., GMAC Mortgage Corporation, Taylor, Bean & Whitaker Mortgage Corp., and Michaela Betty, Defendants–Appellees.

BAP No. MB 10–045.
Bankruptcy No. 08–11434–FJB.
Adversary Proceeding No. 08–01263–FJB.

United States Bankruptcy Appellate Panel of the First Circuit.

April 25, 2011.

Mark W. Corner, Esq., on brief for Plaintiff–Appellant.

Kevin P. McMahon, Esq., on brief for Defendant–Appellee Michaela Betty.

Amato J. Bocchino, Jr., Esq., on brief for Defendants–Appellees Jason Dexter, Mortgage Electronic Registration Systems, Inc., GMAC Mortgage Corporation, and Taylor, Bean & Whitaker Mortgage Corp.

Before HAINES, LAMOUTTE, and DEASY, United States Bankruptcy Appellate Panel Judges.

HAINES, Bankruptcy Judge.

Joseph Braunstein, chapter 7 trustee, appeals from the bankruptcy court's determination that the debtors conveyed certain condominium units before the commencement of their bankruptcy case, and consequently, that the units were not property of the estate. For the reasons set forth below, we **VACATE** the bankruptcy court's judgment and **REMAND** the matter for further proceedings consistent with this decision.

## BACKGROUND

Sergio and Xiomara Janet Aguilar owned real property in Chelsea, Massachusetts as tenants by the entirety. They converted that property to a four-unit residential condominium in accordance with the provisions of Massachusetts' Condominium Act ("the Act"). Mass. Gen. Laws ch. 183A. The Aguilars executed and recorded a master deed under §§ 1 and 2 of the Act, and also recorded a declaration of trust, establishing an association of unit owners to manage and operate the condominium. Mass. Gen. Laws ch. 183A, §§ 8(i) and 10. The trust identified the condominium owners as its beneficiaries, with the Aguilars designated as the initial trustees. The Aguilars were listed on the master deed as the only condominium unit owners. A few months later, the Aguilars amended the master deed to show that the condominium trust owned the individual units aside from their own. They had not, however, actually conveyed the units to the trust.

On behalf of the trust, the Aguilars subsequently sold units 2 and 4 to Jason Dexter ("Dexter") and Michaela Betty ("Betty"), respectively. The deeds .conveying

the units identified the grantors as: "Grantor: Janet Aguilar and Sergio D. Aguilar *as Trustees of the 66 Hooper Street Condominium Trust u/d/t dated February 7, 2005, and recorded in the Suffolk County Registry of Deeds at Book 36484, Page 199.*" (Emphasis supplied). Additionally, the conveyance clauses of each deed identified the grantors as: "*Janet Aguilar and Sergio D. Aguilar, as Trustees, both of Chelsea, Massachusetts.*" (Emphasis supplied). Finally, the grantors' signature lines were labeled "*Janet Aguilar, Trustee as Aforesaid* " and "*Sergio D. Aguilar, Trustee as Aforesaid.*" (Emphasis supplied). The signatures themselves simply read: "Janet Aguilar" and "Sergio D. Aguilar." Nowhere in the unit deeds were either of the Aguilars identified as grantor in his or her individual capacity. Dexter and Betty recorded their deeds and, in turn, granted mortgages on their units to their lenders.[1]

Three years later, the Aguilars filed a chapter 13 petition. Their case was subsequently converted to chapter 7.

Braunstein commenced an adversary proceeding seeking a determination that the prepetition sales of condominium units 2 and 4 did not convey good title and, therefore, that these units remained property of the bankruptcy estate, free and clear of the legal and equitable claims of Dexter, Betty, and their mortgagees. The defendants argued that the deeds had effectively conveyed title to them well before the Aguilars filed for bankruptcy. In the alternative, the defendants asked the court to hold that, if title had not passed under their deeds: (1) such interest as the estate held in their units was subject to constructive trusts for their benefit; (2) that their interests as beneficiaries of those equitable trusts were excluded from the estate pursuant to § 541(d) of the Bankruptcy Code;[2] and (3) that their equitable claims to title were not subject to Braunstein's § 544(b) strong-arm powers.

The parties stipulated to the facts and filed supporting briefs. After argument, the bankruptcy court concluded that the condominium units at issue were effectively conveyed to Dexter and Betty under Massachusetts law, and, thus, were not property of the estate. This appeal ensued.

## JURISDICTION

▮ Before addressing the merits, we must determine our appellate jurisdiction, whether or not the litigants contest it. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). We are empowered to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). Because a judg-

---

1. The Aguilars retained unit 1 for themselves. They sold unit 3 to a third individual. Such claims as involved unit 3 were settled before trial.

2. Reference to the "Bankruptcy Code" or the "Code" is to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.* Unless otherwise indicated, references to statutory sections are to sections of the Bankruptcy Code.

ment in an adversary proceeding is a "quintessential final order," we thus have jurisdiction to review the bankruptcy court's final judgment. *See Lassman v. Keefe (In re Keefe)*, 401 B.R. 520, 523 (1st Cir. BAP 2009).

### STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo.* *See Lessard v. Wilton–Lyndeborough Coop. School Dist.*, 592 F.3d 267, 269 (1st Cir. 2010). The parties contest only the legal basis for the bankruptcy court's ruling. We will review it *de novo.*

### DISCUSSION

■ The bankruptcy court based its decision on the Massachusetts common law of trusts. It concluded that, notwithstanding the fact that the Aguilars never conveyed their interest in units 2 and 4 to the trust, they had nevertheless effectively conveyed all their rights in those units to Dexter and Betty long before their bankruptcy filing.

Although the deed forms identified the Aguilars only as "trustees" of the condominium trust (and not as the individual co-owners they were), the court relied on *Kaufman v. Federal Nat'l Bank*, 287 Mass. 97, 191 N.E. 422 (1934), to determine that the conveyances were effective. In the bankruptcy court's view, *Kaufman* stands for the proposition that when an individual signs a title instrument to property in his capacity as trustee of a trust, he conveys all right, title and interest he has in the property, whether he owns it as a trustee or as an individual. Because *Kaufman* is the linchpin of the court's analysis, we will review its facts, and its import, in detail.

In *Kaufman*, Celia Green was trustee of a real estate operating trust, of which no original beneficiaries had been named, and of which no shares had ever been issued. The *Kaufman* court found that no *cestui* trust had ever existed and that Ms. Green was the actual and sole owner of all trust property. *Id.* at 423. Ms. Green had caused the trust to become indebted to Federal National Bank. To secure the debt, the bank asked for a mortgage on certain real estate owned by Ms. Green individually. *Id.* Working with the bank, Ms. Green mortgaged the property to herself as trustee, and then assigned that mortgage to the bank. The mortgage and subsequent assignment were all properly recorded. *Id.*

Ultimately, the trust defaulted on the mortgage debt, and the bank foreclosed on the property. Two months after the foreclosure was recorded, Ms. Green sold the real estate by quitclaim deed to Kaufman. Kaufman examined the title, finding all the recorded transactions between Ms. Green, her trust, and the bank. Although Kaufman actually knew of the foreclosure, he purchased the property after concluding that the mortgage was void, and therefore its assignment to the bank was void as well. *Id.*

The court agreed that the mortgage Ms. Green made from herself to the trust was indeed technically void, as she was both the maker and the payee of the note it secured. *Id.* at 423–24. However, it held that the mortgage's subsequent assignment to the bank was legally a mortgage. The instrument complied with all the requirements of a property conveyance, and it had clearly been Ms. Green's intent to hypothecate the property to the bank, whether it was by direct mortgage or by assignment. *Id.* at 425. Finally, although Ms. Green had signed the assignment in her capacity as a trustee and individually, the court ruled "the signature of Celia Green as trustee was effective to convey

her individual property as though she had signed simply her name. At law, the official and individual capacities of a trustee are not separated. A trustee simply owns the property, subject to such equitable rights of the *cestui* as may exist." *Id.* at 424 (emphasis added). Because no *cestui* did exist, Ms. Green owned the property outright.

■ We think the bankruptcy court's reliance on *Kaufman* was misplaced. *Kaufman's* holding may still be good law as to Massachusetts common law trusts. However, trusts established under Massachusetts' condominium statute are creatures of a different stripe-and a highly regulated stripe, at that. *See Kaplan v. Boudreaux,* 410 Mass. 435, 573 N.E.2d 495 (1991) (noting that "condominiums are essentially creatures of statute"). Though courts should be guided generally by common law principles when considering statutory trusts, "[i]n some instances, trust law will offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure or its purposes require departing from common-law trust requirements." *Conkright v. Frommert,* —— U.S. ——, 130 S.Ct. 1640, 1648, 176 L.Ed.2d 469 (2010) (citing *Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)). The unique, legislatively prescribed characteristics of condominium trusts inform us that applying generic common law principles to the Aguilars, as condominium trustees in the context of this conveyancing dispute, is inappropriate.

A condominium trust is formed to manage and regulate a condominium. *See* Mass. Gen. Laws ch. 183A, § 8(i). The condominium trust is governed by a declaration of trust and by-laws that establish the obligations and powers of the trustees.

Under § 10 of the Act, the association may appoint managers to oversee the common affairs of the unit owners. Mass. Gen. Laws ch. 183A, § 10. The statute defines "manager" as "the managing agent, [or] the trustees in a self-managed condominium ... who performs or renders management or administrative services to the organization of unit owners." Mass. Gen. Laws ch. 183A, § 1. At a minimum, those services must include: procedures for maintenance and repair of the common areas, insurance requirements, association meetings and voting rights, handling common expenses, managing reserve funds, and assessing unit owners. *See* Mass. Gen. Laws ch. 183A, §§ 10 and 11.

The Act exclusively empowers the condominium trust, and by extension, its trustees, to "conduct litigation and to be subject to suit as to any course of action involving the common areas and facilities or arising out of the enforcement of the by-laws, administrative rules or restrictions in the master deed." *See* Mass. Gen. Laws ch. 183A, § 10(b)(4). And it specifically limits the trustees' exposure to personal liability. Under § 13, all claims involving common areas of the condominium must be brought against the organization, with claims paid first out of common funds, and then apportioned to the individual unit owners. Mass. Gen. Laws ch. 183A, § 13. Thus, in the context of a condominium trust, the Massachusetts legislature has created a trustee with defined responsibilities and duties and with limited personal liability in managing trust affairs. In doing so, it has made condominium trustees akin to corporate officers, and condominium trusts more corporate-like than trust-like in nature.[3] Consequently, the condominium trustee inhabits a role sufficiently

---

3. *See* E. Christopher Kehoe, et al., *Trusts in Real Estate Title Practice in Massachusetts* (Kathleen M. Mitchell, Esq. et al. eds., 2d ed. 2010).

distinct from the trustee's role as an individual as to make application of the *Kaufman* principle (an act of conveyance as trustee sweeps along with it personally owned property, as well) inapposite.[4]

## CONCLUSION

We thus conclude that the court's application of *Kaufman's* rationale to validate the conveyances at issue was error. Because the defendants have raised sundry equitable defenses which the bankruptcy judge did not assay, we will remand the matter for further consideration including, perhaps, the taking of additional evidence. We therefore **VACATE** the judgment and **REMAND** this matter to the bankruptcy court for further proceedings.

---

4. We pause here to note, as well, that the *Kaufman* result placed title in the same hands as those indicated by a search of the real property records, with no break in the chain of title. Here, in a context where the legislature has worked to establish some degree of predictability and regularity, applying *Kaufman's* teaching would result in a break of the record title chain.