ALLEN LOPEZ & others[1] vs. MEDFORD COMMUNITY
CENTER, INC., & others.[2]

Middlesex.  May 8, 1981. — July 27, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Attorney General.  Charity.  Corporation*, Members, By-laws, Chari-
table corporation, Receivership. *Receiver.  Practice, Civil*, Receiver,
Judicial discretion, Standing.

Plaintiffs in an action seeking declaratory and injunctive relief against
the officers and directors of a charitable corporation had standing only
to litigate claims distinct from those of the general public, and the
judge, therefore, erred in admitting testimony respecting the defend-
ants' alleged mismanagement of the corporation's affairs after being
informed of the Attorney General's decision not to participate in the
case.  [166-168]

A judge's appointment of a receiver to take charge of the affairs of a chari-
table corporation exceeded the bounds of his authority in view of the
limited claims properly before him.  [168-170]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 5, 1979.

The case was heard by *Clancy*, J., a District Court judge
sitting under statutory authority.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*William F. Macauley* (*Donald E. Hacker, Jr.*, with him)
for the defendants.

*Charles F. Choate & Jacques C. Leroy* for the plaintiffs.

NOLAN, J.  On November 4, 1979, the plaintiffs com-
menced an action seeking a declaration of their rights as

---

[1] Linda Huntington, Lillian Sears, Geraldine Ferlito, and Jack Pratti.

[2] Alfred Fondacaro, Jr., Mehran Juskalian, Veronica Henaghan, Rich-
ard Aliberti, Amato Lepore, Marie Maio, and Charles Allitto.

members and officers of Medford Community Center, Inc. (MCC), and ancillary injunctive relief designed to prevent the individual defendants, all of whom were then acting as officers or directors of the corporation, from taking any action to interfere with the membership rights asserted. On January 4, 1980, following a three-day trial, the trial judge ordered that a receiver be appointed to take control of the corporate affairs of MCC, to recruit new members of the corporation, and to hold a valid election of officers at the earliest possible time.

The defendants appealed, and on January 25, 1980, the Appeals Court stayed the order in so far as it directed an election on the ground that such an election, if held, might moot the defendants' appeal. On November 4, 1980, judgment was entered incorporating verbatim the terms of the initial order, but noting the intervening stay issued by the Appeals Court. The defendants appealed from this judgment, and the plaintiffs appealed from the related ruling that they were neither members nor officers of MCC.

We granted the plaintiffs' application for direct appellate review, and consolidated the appeals.[3] We conclude that the trial judge erred in appointing a receiver, and remand for the fashioning of a more limited remedy to correct the deficiencies found to exist in MCC's governance.

MCC is a charitable corporation organized for civic and educational purposes under G. L. c. 180, in 1960.[4] In 1972, MCC had an annual budget of not more than $20,000 and was staffed by one full-time and two part-time employees. By 1979, its annual budget had increased to approximately $750,000 and its employees numbered more than one hundred. Between 1972 and 1979, MCC successfully launched and administered a number of community service programs, including a day care center, an after school program, a home-

---

[3] We transferred to this court on our own motion the defendants' appeal from the initial order appointing a receiver.

[4] The creation of MCC was accomplished by filing a change of name in 1960; the predecessor corporation, the Police Athletic League, Inc., of Medford, Mass., was organized in 1958.

maker services program, and several other youth programs. In 1979, MCC received preliminary approval of its application of a 1.5 million dollar Federal grant for construction of housing for the elderly.

The plaintiffs are five members of a group of forty-four persons who attended a meeting of MCC's board of directors on the evening of September 17, 1979. Their purpose in attending was to become associate members of the organization with the objective of removing the board members then in place and electing officers of their own choosing. When the acting board members refused to permit these actions, the dissident group convened in a separate room and proceeded with a purported election of officers. In their complaint, the plaintiffs claim that they and others each contributed $2.00 to MCC at the September 17 board meeting and thereby became associate members of the corporation. They aver that on the same evening they duly elected their own slate of officers.[5] The complaint goes on to allege that the individual defendants hold their offices in violation of the corporate constitution and by-laws; that the president of MCC improperly borrowed money from the corporation with the board's knowledge; and that the board has mismanaged and neglected the affairs of the corporation in a variety of respects. Following allegations of irreparable damage to the corporation if the defendants are permitted to continue in office, the plaintiffs sought a declaration of their rights as members and officers of the corporation, injunctive relief to prevent MCC from enrolling associate members pending disposition of the case, and appointment by the court of "competent and reputable citizens of Medford as associate members . . . in an appropriate number to be determined by the court."

---

[5] The relevant provision of the constitution and by-laws of MCC, as found by the trial judge, is as follows: "Any person who contributes annually to the support of this corporation the sum of two dollars or more shall be enrolled as an associate member and is entitled to vote at the annual meeting."

The defendants responded with a motion to dismiss so much of the complaint as alleged mismanagement by the board, stating as the ground for dismissal the Attorney General's exclusive jurisdiction in this area and the plaintiffs' consequent lack of standing. In addition, the defendants moved for summary judgment as to the plaintiffs' claim that they were the validly elected officers of MCC. The latter motion was granted by a judge other than the trial judge. The plaintiffs were given leave to add the Attorney General as a party and to amend their complaint to allege their status as members, but not officers, of MCC. Prior to trial, the parties met with an assistant attorney general to discuss the case, but the Attorney General was never properly joined as a party.

In this posture, the case came on for trial. At the end of the first day of trial, the judge, on his own motion, ordered from the bench that a receiver be appointed. On January 8, 1980, a receiver was named to take full control of the corporation, and has continued in that position to the present time. The trial judge entered findings of fact and conclusions of law stating the applicable provisions of the corporate constitution and by-laws, and concluding that, at least since 1972, there has been no compliance with the provisions dealing with membership and the election of officers.

1. *Plaintiffs' standing.* The plaintiffs included in their complaint numerous allegations of corporate mismanagement by MCC's board of directors. After the defendants moved to dismiss these claims for lack of standing, the plaintiffs were given leave to amend their complaint to join the Attorney General as a party. This was never done, however, and the defendants' answer to the complaint again raised the question of the plaintiffs' standing in the form of an affirmative defense. At the commencement of the trial, an assistant attorney general appeared to inform the trial judge that the Attorney General had considered the allegations of corporate mismanagement and had determined that the public interest would not be served by his participation in the case. The trial judge, nevertheless, allowed the intro-

duction of voluminous testimony and other evidence offered to prove the plaintiffs' allegations of mismanagement.

The defendants are correct in their contention that the injection of these issues into the trial was improper. It remains the general rule that "it is the exclusive function of the Attorney General to correct abuses in the administration of a public charity by the institution of proper proceedings. It is his duty to see that the public interests are protected and to proceed in the prosecution or to decline so to proceed as those interests may require." *Ames* v. *Attorney Gen.*, 332 Mass. 246, 250-251 (1955), quoting from *Dillaway* v. *Burton*, 256 Mass. 568, 573 (1926). This was the rule at common law and it is currently codified at G. L. c. 12, § 8. *Ames* v. *Attorney Gen., supra* at 250. As the *Ames* case makes clear, the rule is rooted in the principles of separation of powers embodied in art. 30 of our Declaration of Rights. *Id.* at 253.

Notwithstanding the Attorney General's exclusive and discretionary role as a protector of the public interest in the efficient and lawful operation of charitable corporations, a private plaintiff possesses standing to assert interests in such organizations which are distinct from those of the general public. *Ames* v. *Attorney Gen, supra* at 252; *Dillaway* v. *Burton, supra* at 573. Thus, in *Jessie* v. *Boynton*, 372 Mass. 293, 302-305 (1977), we held that members of a charitable corporation who alleged that the corporation's officers, in violation of their fiduciary duties, had induced the members to vote in favor of a by-law amendment eliminating their voting rights stated a cause of action sufficient to withstand a motion to dismiss. Conceding that a member of a charitable corporation has no property interest in his right to vote, we observed that the plaintiffs nevertheless "became members of the [charitable corporation] voluntarily by the payment of dues. Each had a vote concerning the operation of the [corporation] to the extent the by-laws provided. That right to vote should not be taken away except in accordance with lawful procedures and practices." *Id.* at 305. Cf. *Mitchell* v. *Albanian Orthodox Diocese in America, Inc.*,

355 Mass. 278, 282 (1969) (while courts will not interfere in disputes which are primarily ecclesiastical in nature, they may nevertheless interpret the by-laws of a Massachusetts charitable corporation, which constitute a contract between the members and the church).

In the instant case, the plaintiffs had standing only to litigate their claim that they were unlawfully denied membership in MCC, and that that denial was caused by a general policy of the directors to perpetuate themselves in office in violation of those provisions of the corporation's by-laws defining its governance.

2. *Plaintiffs' status as members of MCC.* The plaintiffs have appealed from the trial judge's findings and ruling that they did not become members of MCC by their actions at the meeting of September 17, 1979, and were not qualified to vote for officers of the corporation at that time. The plaintiffs' claim that they were validly elected officers of MCC was disposed of by summary judgment prior to trial. No appeal from that judgment was taken, and no issue relating to it is before us on appeal. As the plaintiffs concede in their brief, the primary remaining significance of their claim to membership in MCC relates to the question of their standing to sue. We have already concluded that their claim was sufficient to confer standing. The trial judge's finding that the plaintiffs never properly became members of MCC is not clearly erroneous and is therefore binding on appeal. *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 674 (1977). The plaintiffs, of course, retain their rights to apply for membership in the future, if they choose to do so.

3. *Scope of relief.* The final question before us is whether, in ordering that MCC be placed in receivership, the trial judge abused his discretion. Evaluating his action in light of the limited issues that were properly before him, we conclude that he did.

The plaintiffs never sought appointment of a receiver for MCC prior to trial. The possibility of a receivership was raised spontaneously by the trial judge immediately prior to

the noon recess on the opening day of trial. At the close of testimony on that day, the judge read from the bench an order appointing a receiver to exercise "the full power and authority" of the board pending the outcome of the litigation. The judge cited as the reasons underlying his action his conclusions that the present board "appears unable to function," that "the said board's inability to function jeopardizes a possible grant of 1.5 million dollars for the construction of elderly housing," and thus that the public interest required the appointment of a receiver.

It is beyond dispute that a court with equity jurisdiction has the power to appoint a receiver. *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 732-733 (1980). "Generally, the appointment of a receiver rests in the sound discretion of the court." *Falmouth Nat'l Bank* v. *Cape Cod Ship Canal Co.*, 166 Mass. 550, 568 (1896). It is equally clear, however, that the remedy is sparingly invoked. A decree appointing a receiver "can often have irreversible and far-reaching consequences for the [entity placed in receivership] and others. Therefore, particular care must be exercised by a judge in order to ascertain that facts exist which justify, and in the judge's discretion require, the appointment of a temporary or permanent receiver." *George Altman, Inc.* v. *Vogue Internationale, Inc.*, 366 Mass. 176, 179 (1974). Cf. *Perez* v. *Boston Hous. Auth.*, *supra* at 733 (receivership characterized as a remedy of "last resort"). See generally 12 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2983 at 21 (1973) (receiverships under Fed. R. Civ. P. 66 "should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in the property").

Viewed in light of the limited claims which were properly at issue in this case, we conclude that the trial judge's appointment of a receiver clearly exceeded the bounds of his authority. We have stated our conclusion that the plaintiffs had no standing to prosecute their claims of corporate mismanagement. After the Attorney General was not properly joined as a party, and in fact expressed his decision not to

pursue these allegations, the judge should have excluded evidence offered to prove these allegations from the trial. To the extent that his choice of remedy was influenced by evience of corporate mismanagement, it was beyond the scope of the controversy properly before him.

The allegations that MCC was being managed in violation of the corporate by-laws providing for membership were properly before the court. It is evident from the judge's order that by the appointment of a receiver he sought, at least in part, to return the corporation to a system of governance in accord with its by-laws. This objective is perfectly proper in light of the judge's finding, supported by abundant evidence, that since 1972 no members had been added to the corporation and that since 1970 there had been no annual meetings of the members nor any valid election of officers and directors. These deficiencies did not necessitate the drastic remedy imposed, however.

This case must be returned to the Superior Court. There, the present receivership is to be terminated. A more limited remedy should be fashioned to ensure compliance with the provisions of MCC's constitution and by-laws, as found by the trial court. Such relief should deal specifically with the recruitment of new members by MCC and the scheduling of an annual meeting at which corporate officers may be elected. The Superior Court may, in its discretion, retain jurisdiction over this case to ensure that its orders are expeditiously carried out. The case is remanded for proceedings consistent with this opinion.

*So ordered.*