McCann, J.
INTRODUCTION
Attorney for the plaintiffs — Burton Chandler, Esq. Attorney for the defendant — Michael H. Riley, Esq.
*144 The plaintiffs’ Amended Complaint is in one count in the nature of a Declaratory Judgment seeking to obtain a determination of the terms of a trust. The answer of the defendant is a general denial of the substantive allegations and three affirmative defenses: (1) lack of standing of plaintiffs; (2) failure to join the Attorney General of the Commonwealth of Massachusetts as an indispensable parly under Rule 19; and (3) unclean hands.
The Court, in a Memorandum of Decision, dismissed the amended complaint without prejudice on the basis of lack of standing. Plaintiffs filed a motion to reconsider, which, as to the factual changes is allowed. The factual background section below incorporates the plaintiffs’ requested changes. In addition, the Court vacates its Judgment of Dismissal, orders the parties to notify the Attorney General of his interest in this suit. Thereafter this Court will complete the Findings of Fact and Rulings of Law and render an appropriate ruling on Plaintiffs Amended Complaint for Declaratory Relief after the Attorney General is joined as a necessary party, or declines to be joined as a necessary party. See Order at end of this decision.
FACTUAL BACKGROUND
The following facts are not in dispute. The plaintiff Yeshiva Achei Tmimim Lubavitz of Worcester, Inc. (Yeshiva) is a nonprofit charitable organization. It was formed under G.L.c. 180. It maintains a usual place of business at 22 Newton Avenue North, Worcester, Massachusetts. Its business is that of operating and conducting a Jewish private school for boys and girls from preschool age through high school. For Federal Tax purposes, it is qualified under §501(c) (3) of the Internal Revenue Code as a charitable organization.
The defendant, Carl Baylis as Trustee of the Max Fallman Revocable Trust (Baylis), is an attorney practicing law in Worcester, Massachusetts and was doing so in 1999.
In late 1999, Fallman consulted with Baylis in regard to the preparation of an estate plan. Fallman expressed to Baylis his wish to set up a scholarship fund to take effect after the death of both he and his wife. The scholarship fund was to be used for advanced studies and schools of higher learning for both male and female graduates of Yeshiva. One page of handwritten notes was made by Baylis at that first meeting. Among other things, it listed the assets of Fallman. On the bottom of the page of notes was the following:
Graduates of Yeshiva A
male
preferred school of higher lr
medicine
engineering
As a result of the meeting, Baylis prepared estate planning documents for Fallman consisting of the Max Fallman Revocable Trust and Last Will and Testament of Max Fallman. The trust was a revocable trust which provided that the scholarship fund in question be set up by the trustee. The will left all of the estate assets to the trust. The trust was set up to provide first for the support of Fallman’s spouse and then to be used for the scholarship purposes as set forth in the trust. On December 8, 1999, Fallman went to Baylis’s office. He reviewed the instruments and requested the changes that are noted at the bottom of the one page of notes and set forth above. After Baylis made the appropriate changes, the instruments were executed by Fallman.
Fallman was predeceased by his wife. Fallman himself died on April 19, 2001. His will was appropriately probated. Carl Baylis serves as executor. Under.the terms of the trust, Fallman is the original trustee and upon his death, the successor trustee is Baylis. Baylis currently serves as trustee. After payment of debts and expenses, there will be approximately $800,000 available in the estate to fund the trust.
§2.3 of the trust provides that:
Upon the death of the survivor of the Donor and the Donor’s spouse, the Trustee shall hold, manage, invest and reinvest the same and shall collect and receive the income thereof, and after paying or deducting all lawful expenses thereof, the Trustee is directed to set up a scholarship fund, to be known as the FALLMAN FAMILY AND ORLIN FAMILY MEMORIAL SCHOLARSHIP FUND, for graduates male or female of the Yeshiva Achei Tmimim Academy under the following terms and conditions:
A. The Trustees of the scholarship fund must be the officers of the Yeshiva Achei Tmimim Academy and must not include any member of the Rabbi’s immediate family (i.e. wife, children, brother, sister or any spouse of the aforementioned);
B. The recipients of this scholarship fund must satisfy the following conditions:
(1) Must be a graduate, male or female, of the Yeshiva Achei Tmimim Academy;
(2) Must go to a school for advanced studies and any school of higher learning (for example, Medicine, Law, Engineering, Technology, etc.) leading to a degree in a foreign or domestic university.
C. The Officers can have submitted to them, on a yearly basis, applications for renewal. However, any applicant for renewal must have at least a “C” average;
D. This scholarship fund must be a separate entity separate and apart from the Yeshiva Achei Tmimim Academy, and the Directors are hereby notified that they must apply for a Charitable exemption under the Section 501 (c)(3) [sic] or the appropriate successor under the Internal Revenue Code.
The estate is at a point where it can be distributed to the trust and the trust funded. Baylis as trustee and as a lawyer opined that tax exempt status should be obtained under §501(c) (3) of the Internal Revenue *145 Code, either as a trust or as a corporate entity established to cany out the terms of the trust. He further opined that, since trust vehicles are not always acceptable by the Internal Revenue Service, he was warranted in exercising his discretion as Executor and/or Trustee to use the corporate structure. In doing so, he prepared articles of organization under G.L.c. 180 to form the Fallman Family and Orlin Family Memorial Scholarship Fund. Baylis copied §2.3 of the trust word for word in drafting Article 2 of the proposed articles of incorporation, but added, after the word “university,” the following: “following the attainment of a Bachelor’s Degree.” Thus Article 2 of the proposed Articles of Incorporation reads in full as follows:
Must be pursuing graduate studies at a school for advanced studies and any schools of higher learning (for example, Medicine, Law, Engineering, Technology, etc.) leading to a degree in a foreign or domestic university, following the attainment of a Bachelor's Degree. [Emphasis added by the Court.]
Since Fallman’s death, only one inquiiy has been made to the Fallman Scholarship fund in regard to a scholarship for law school. No scholarship applications have been made for a college scholarship. There is no evidence before this Court that any information has been disseminated or advertised to make the fund known, in all likelihood because the fund is not yet established because of this litigation.
A dispute has arisen as to whether the language in §2.3B should be construed to allow scholarships for Yeshiva graduates seeking to attend undergraduate schools and graduate schools or whether it should be construed to allow scholarships only for Yeshiva graduates who are also college graduates and who are seeking the funds to attend graduate school.
§6.7 of the trust provides:
It is the Donor’s intention to give the Trustee wide discretion in matters of management of the Trust property and the following enumeration of powers is not intended to exclude other powers reasonably incidental to such management... to deal otherwise with the Trust property in such manner, and on such terms and conditions as any individual might do as outright owner of the property . .. The Trustee’s exercise or nonexercise of powers and discretions in good faith shall be conclusive on all persons.
DISCUSSION
A. Declaratory Judgments
Under G.L.c. 231A, §1, a binding declaratory judgment may be made by a court “in any case in which an actual controversy has arisen.” The question of whether there exists an actual controversy is closely related to the question of whether the plaintiff has standing. Massachusetts Ass’n of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290 (1977), citing South Shore Nat’l Bank v. Board of Bank Incorporation, 351 Mass. 363 (1966). Both actual controversy and legal standing are required for declaratory relief. Hillman v. Second Bank-State Street Trust Co., 338 Mass. 15, 19 (1958); United Oil Paintings, Inc. v. Commonwealth, 30 Mass.App. 958 (1991).
While the meaning of “actual controversy” is liberally construed, Massachusetts Association of Independent Insurance Agents and Brokers, Inc., 351 Mass, at 293, the purpose of such liberal construction is to relieve a plaintiff from having to first risk violating a law or contract in order to show the existence of an actual controversy. School Committee of Cambridge v. Superintendent of Schools, 320 Mass. 516, 518 (1946). A pleading that sets forth a dispute which, unless resolved, will lead to “subsequent litigation as to the identical subject matter,” Boston v. Keene Corp., 406 Mass. 301, 304 (1989) (citations omitted), is apleading that satisfies the “actual controversy” requirement.
A plaintiff with standing is one who has personal rights that will be directly affected in a significant way by the declaratory judgment. Bonan v. Boston, 398 Mass. 315 (1986). “The declaration sought must be ‘intended to have an immediate impact on the rights of the parties’ . . . [w]here there is an injury, or a threatened injury, a declaration will have an immediate impact.” United Oil Paintings, Inc. v. Commonwealth, 30 Mass.App.Ct. 958, quoting Bello v. South Shore Hospital, 384 Mass. 770, 778 (1981).
In a dispute over the administration of a charitable trust, plaintiffs who are not legal beneficiaries of the trust lack standing. Weaver v. Wood, 425 Mass. 270 (1997), citing Trustees of Dartmouth College v. Quincy, 331 Mass. 219, 118 N.E.2d 89 (1954).
Where the court lacks the jurisdictional basis to issue a declaratory judgment, it “must put aside the natural urge to proceed directly to the merits of [an] important dispute and to ‘settle’ it for the sake of convenience and efficiency.” Alliance, AFSCME/SEIU v. Commonwealth, 425 Mass. 534 (1997).
The Court rules and finds that an actual controversy exists as to whether the scholarship fund is to be used for both college and graduate school scholarships, or only for students attending graduate schools.
B. Attorney General as a Necessary Party
G.L.c. 12, §8 states that “[t]he attorney general shall enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent breaches of trust in the administration thereof.” See also Elias v. Steffo, 310 Mass. 280 (1941); Dillaway v. Burton, 256 Mass. 568 (1926). The Supreme Judicial Court has declared that, with respect to charitable trusts, the “legislature has determined that the Attorney General is responsible for ensuring that its charitable funds are used in accordance with the donor’s wishes.” Weaver, 425 Mass, at 275.
*146 G.L.c. 12, §8G provides that “(t]he attorney general shall be made a party to all judicial proceedings in which he may be interested in the performance of his duties ...” A declaratory judgment proceeding is not appropriate where persons who have an interest in the matter are not before the court. Gannon v. Mayor of Revere, 401 Mass. 232 (1987).
G.L.c. 12, §8H gives the attorney general discretionary authority to investigate whether breaches of trust in the administration of a public charity have occurred or whether charitable funds have not been applied to charitable purposes.
There is a narrow exception to the general rule that only the attorney general can initiate suit alleging the misuse of charitable funds, but the exception is limited to cases where the alleged breach of the charitable trust or misuse of charitable funds directly affects a personal right of the plaintiff that is distinct from the rights of the trust’s beneficiaries. Lopez v. Medford Community Center, Inc., 384 Mass. 163 (1981) (plaintiff members of community center had standing for the limited purpose of litigating claim that defendants interfered with their membership rights). In BSA v. Monadnock Trust, Inc., 9 Mass. L. Rptr. 68 (Worcester Super.Ct. August 13, 1998) (Fecteau, J.), private plaintiffs successfully brought a declaratory judgment suit against a charitable trust requiring the trust to transfer certain funds under cy pres principles because the court found that “since the plaintiffs allege to be the only duly authorized entity able to carry out the donor’s intent, and have, in a representative capacity already benefitted from the trusts’ directives in the past, they may sustain an action on the basis that they have an interest in the funds, special and distinct from the public interest.”
The trust or corporation to provide the scholarship fund that the Max Fallman Revocable Trust directs the trustee to organize will be a charitable entity, and, whether the Trust itself or a corporate vehicle when drafted and accepted, it will come under the purview of the Attorney General. Yeshiva is not a beneficiary of the trust if it cannot point to any personal right independent from that of the intended beneficiaries as grounds upon which to bring a declaratory judgment action.
C. Joinder of Necessary Parties
Mass.R.Civ.P. 19 requires joinder of parties who are necessary and indispensable to the case, and whose absence would prevent full relief to those already parties to the case. The purpose of the rule is to provide relief to all interested parties, and to prevent multiple suits against the defendant. See Commonwealth v. Town of Andover, 378 Mass. 370 (1979). Insofar as the Attorney General is a necessary party, he should be properly joined in this judicial proceeding.
D. Trustee’s Powers and Incidental Beneficiaries
Even if the plaintiffs do not lack standing, Baylis has the discretion to administer the trust in accordance with his reasonable interpretation of its terms. A trustee is a fiduciary appointed to carry out the terms of the trust in good faith for the benefit of the trust’s beneficiaries. As a general rule, a trustee has some measure of implied discretion and may have express discretionary authority in the administration of the trust, depending on its terms. Boston Safe Deposit & Trust Co. v. Lewis, 317 Mass. 137, 141 (1944). Furthermore, the trustee’s right to fairly exercise permitted discretionary power should not be'disregarded. In Bradway v. Shattuck, 325 Mass. 168, 172 (1950), the court declared that “(the judgment of the court cannot be fairly substituted for the discretion of the [persons appointed by the testator], when fairly exercised, even though the court may think the decision is wrong.”
A trust’s beneficiaries are those for whose benefit the trust is administered. Incidental beneficiaries are not legal beneficiaries. “Just as a person who incidentally may profit by the performance of a contract cannot enforce the contract, so a person cannot enforce a trust merely because he may incidentally benefit from the performance of the trust.” Scott on Trusts, §126 (4th ed. 2001).
ORDER
For the foregoing reasons, plaintiffs’ Motion for Reconsideration is ALLOWED as to the factual changes requested. The Court’s prior Judgment of Dismissal, dated March 26, 2004, is hereby vacated. Furthermore, a decision on the merits of the Amended Complaint for Declaratory Judgment is stayed pending notification of the Attorney General’s decision whether to join this suit, and all parties are hereby ORDERED to:
(1) Notify the Attorney General, as an interested party to this suit, by forwarding to him a copy of the original Findings and Rulings of this Court and a copy of this First Supplemental Memorandum of Decision together with copies of the parties’ briefs;
(2) Request a response from the Attorney General to issue within forty-five (45) days after the date of this Order as to his intent to join this suit as a necessary party;
(2) The Court respectfully requests the Attorney General to appropriately notify this Court of his action in this matter, and this Court will then conclude its Findings of Fact and Rulings of Law.