McCann, J.

INTRODUCTION

Attorney for the plaintiffs — Burton Chandler, Esq. Attorney for the defendant — Michael H. Riley, Esq. Attorney for Thomas F. Reilly, Attorney General — Johanna Soris, Assistant Attorney General.

PROCEDURAL BACKGROUND

The plaintiffs’ Amended Complaint is in one count in the nature of a Declaratory Judgment seeking to obtain a determination of the terms of a trust. The answer of the defendant is a general denial of the substantive allegations and three affirmative defenses: (1) lack of standing of plaintiffs; (2) failure to join the Attorney General of the Commonwealth of Massachusetts as an indispensable party under Rule 19 and (3) unclean hands.
The Court, in a Memorandum of Decision dated March 26, 2004 (paper 17), dismissed the amended *617 complaint without prejudice on the basis of lack of standing. Plaintiffs filed amotion to reconsider, which, as to the factual changes the Court previously allowed in its First Supplemental Memorandum dated August 3, 2004 (paper 20) (18 Mass. L. Rptr. 143). In addition, the Court vacated its original Judgment of Dismissal, and ordered the parties to notify the Attorney General of his interest in this suit, i.e. whether or not to join as a party. It was ordered that copies of all pleadings be sent by counsel of record to the Attorney General. That was done. Through clerical error, however, the Judgment was not Vacated and this Court now Vacates the Judgment entered March 30, 2004.
Pursuant to the Court’s Order of August 3, 2004, the Attorney General was notified of this pending action. On November 1, 2004, Thomas F. Reilly, Attorney General for the Commonwealth of Massachusetts, gave notice pursuant to G.L.c. 12, §8G that he shall be made a party to all judicial proceedings. He requested that this Court allow him to join this action as a necessary party. An appearance was filed. In his response, he notified the Court as follows:
The Attorney General intends to take no further action in this matter at this time in anticipation of this Honorable Court’s intention to conclude its Findings of Fact and Rulings of Law upon the Court’s receipt of the Attorney General’s Response in compliance with the Court’s Order dated August 3, 2004.
With that in mind, this Court ALLOWS the Attorney General to join this action as a necessary party. Upon all of the evidence, this Court makes the following findings of fact and rulings of law.

FACTUAL BACKGROUND

The plaintiff Yeshiva Achei Tmimim Lubavitz of Worcester, Inc. (Yeshiva) is a nonprofit charitable organization. It was formed under G.L.c. 180. It maintains a usual place of business at 22 Newton Avenue North, Worcester, Massachusetts. Its business is that of operating and conducting a Jewish private school for boys and girls from preschool age though high school. For Federal Tax purposes, it is qualified under §501(c) (3) of the Internal Revenue Code as a charitable organization.
The defendant, Carl Baylis as Trustee of the Max Fallman Revocable Trust (Baylis), is an attorney practicing law in Worcester, Massachusetts and was doing so in 1999.
In late 1999, Fallman consulted with Baylis in regard to the preparation of an estate plan. Fallman expressed to Baylis his wish to set up a scholarship fund to take effect after the death of both he and his wife. The scholarship fund was to be used for advanced studies and schools of higher learning for both male and female graduates of Yeshiva. One page of handwritten notes was made by Baylis at that first meeting. Among other things, it listed the assets of Fallman. On the bottom of the page of notes was the following:
Graduates of Yeshiva A
male
preferred school of higher Ir
medicine
engineering
As a result of the meeting, Baylis prepared estate planning documents for Fallman consisting of the Max Fallman Revocable Trust and Last Will and Testament of Max Fallman. The trust was a revocable trust which provided that the scholarship fund in question be set up by the trustee. The will left all of the estate assets to the trust. The trust was set up to provide first for the support of Fallman’s spouse and then to be used for the scholarship purposes as set forth in the trust. On December 8, 1999, Fallman went to Baylis’ office. He reviewed the instruments and requested the changes that are noted at the bottom of the one page of notes and set forth above. After Baylis made the appropriate changes, the instruments were executed by Fallman.
Fallman was predeceased by his wife. Fallman himself died on April 19, 2001. His will was appropriately probated. Carl Baylis serves as executor. Under the terms of the trust, Fallman is the original trustee and upon his death, the successor trustee is Baylis. Baylis currently serves as trustee. After payment of debts and expenses, there will be approximately $800,000 available in the estate to fund the trust.
§2.3 of the trust provides that:
Upon the death of the survivor of the Donor and the Donor’s spouse, the Trustee shall hold, manage, invest and reinvest the same and shall collect and receive the income thereof, and after paying or deducting all lawful expenses thereof, the Trustee is directed to set up a scholarship fund, to be known as the FALLMAN FAMILY AND ORLIN FAMILY MEMORIAL SCHOLARSHIP FUND, for graduates male or female of the Yeshiva Achei Tmimim Academy under the following terms and conditions:
A. The Trustees of the scholarship fund must be the officers of the Yeshiva Achei Tmimim Academy and must not include any member of the Rabbi’s immediate family (i.e. wife, children, brother, sister or any spouse of the aforementioned);
B. The recipients of this scholarship fund must satisfy the following conditions:
(1) Must be a graduate, male or female, of the Yeshiva Achei Tmimim Academy;
(2) Must go to a school for advanced studies and any school of higher learning (for example, Medicine, Law, Engineering, Technology, etc.) leading to a degree in a foreign or domestic university.
*618 C. The Officers can have submitted to them, on a yearly basis, applications for renewal. However, any applicant for renewal must have at least a “C” average;
D. This scholarship fund must be a separate entity separate and apart from the Yeshiva Achei Tmimim Academy, and the Directors are hereby notified that they must apply for a Charitable exemption under the Section 501 (c)(3) or the appropriate [sic] successor under the Internal Revenue Code.
The estate is at a point where it can now be distributed to the trust and the trust funded. Baylis as trustee and as a lawyer opined that tax-exempt status should be obtained under §501(c) (3) of the Internal Revenue Code, either as a “trust” or as a separate “corporate entity” established to carry out the terms of the trust. He further opined that, since trust vehicles are not always acceptable by the Internal Revenue Service, he was warranted in exercising his discretion as Executor and/or Trustee to use the “corporate” structure. In doing so, he prepared articles of organization under G.L.c. 180 to form the Fallman Family and Orlin Family Memorial Scholarship Fund. Baylis copied §2.3 of the trust word for word in drafting Article 2 of the proposed articles of incorporation, but added, after the word “university,” the following: “following the attainment of a Bachelor’s Degree.” Thus Article 2 of the proposed Articles of Incorporation reads in full as follows:
"Must be pursuing graduate studies at a school for advanced studies and any schools of higher learning (for example, Medicine, Law, Engineering, Technology, etc.) leading to a degree in a foreign or domestic university, following the attainment of a Bachelor’s Degree.” [Emphasis added by the Court.]
Since Fallman’s death, only one inquiry has been made to the Fallman Scholarship fund in regard to a scholarship for law school. No scholarship applications have been made for a college scholarship. There is no evidence before this Court that any information has been disseminated or advertised to make the fund known, in all likelihood because the fund is not yet established because of this litigation. Although the income to the trust may be determined to be nontaxable for federal income tax purposes, if is not distributed pursuant to the terms of the trust and consistent with the trust’s purposes, it may be subject to a penalty tax in lieu of an income tax.
A dispute has arisen as to whether the language in §2.3B should be construed to allow scholarships for Yeshiva graduates seeking to attend undergraduate schools and graduate schools or whether it should be construed to allow scholarships only for Yeshiva graduates who are also college graduates and who are seeking the funds to attend graduate school.
§6.7 of the trust provides:
It is the Donor’s intention to give the Trustee wide discretion in matters of management of the Trust property and the following enumeration of powers is not intended to exclude other powers reasonably incidental to such management. . .
C ... to deal otherwise with the Trust property in such manner . . . and on such terms and conditions as any individual might do as outright owner of the property
O . . . The Trustee’s exercise or nonexercise of powers and discretions in good faith shall be conclusive on all persons.

DISCUSSION

A. Declaratory Judgments
Under G.L.c. 231A, §1, a binding declaratory judgment may be made by a court “in any case in which an actual controversy has arisen.” The question of whether there exists an actual controversy is closely related to the question of whether the plaintiffs have standing. Massachusetts Asso. of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290 (1977), citing South Shore Nat’l Bank v. Board of Bank Incorporation, 351 Mass. 363 (1966). Both actual controversy and legal standing are required for declaratory relief. Hillman v. Second Bank-State Street Trust Co., 338 Mass. 15, 19 (1958); United Oil Paintings, Inc. v. Commonwealth, 30 Mass.App. 958 (1991).
While the meaning of “actual controversy” is liberally construed, Massachusetts Association of Independent Insurance Agents and Brokers, Inc., 351 Mass. at 293, the purpose of such liberal construction is to relieve a plaintiff from having to first risk violating a law or contract in order to show the existence of an actual controversy. School Committee of Cambridge v. Superintendent of Schools, 320 Mass. 516, 518 (1946). A pleading that sets forth a dispute which, unless resolved, will lead to “subsequent litigation as to the identical subject matter,” Boston v. Keene Corp., 406 Mass. 301, 304 (1989) (citations omitted), is a pleading that satisfies the “actual controversy” requirement.
A plaintiff with standing is one who has personal rights that will be directly affected in a significant way by the declaratory judgment. Bonan v. Boston, 398 Mass. 315 (1986). “The declaration sought must be ‘intended to have an immediate impact on the rights of the parties’ . . . [w]here there is an injury, or a threatened injury, a declaration will have an immediate impact.” United Oil Paintings, Inc. v. Commonwealth, 30 Mass.App.Ct. 958, quoting Bello v. South Shore Hospital, 384 Mass. 770, 778 (1981).
In a dispute over the administration of a charitable trust, plaintiffs who are not legal beneficiaries of the trust lack standing. Weaver v. Wood, 425 Mass. 270 (1997), citing Trustees of Dartmouth College v. Quincy, 331 Mass. 219, 118 N.E.2d 89 (1954).
Where the court lacks the jurisdictional basis to issue a declaratory judgment, it “must put aside the *619 natural urge to proceed directly to the merits of [an] important dispute and to ‘settle’ it for the sake of convenience and efficiency." Alliance, AFSCME/SEIU v. Commonwealth, 425 Mass. 534 (1997).
The Court mies and finds that an actual controversy exists as to whether the scholarship fund is to be used for both college and graduate school scholarships, or only for students attending graduate schools.
B.Attorney General as a Necessary Party
This Court previously addressed the issue as to whether or not the Attorney General was a necessary party under G.L.c. 12, §8 and determined that he was. It also addressed the issue as to whether or not Yeshiva AcheiTmimimLubavitz of Worcester, Inc. or its officers had standing to bring this suit and it determined that they did not.
The complaint was dismissed because the Attorney General had not been joined as a party and Yeshiva Achei Tmimim Lubavitz of Worcester, Inc. did not have standing. Those reasons are reiterated here for clarification purposes.
G.L.c. 12, §8 states that “[t]he attorney general shall enforce the due application of funds given or appropriated to public charities within the commonwealth and prevent breaches of trust in the administration thereof.” See also Elias v. Steffo, 310 Mass. 280 (1941); Dillaway v. Burton, 256 Mass. 568 (1926). The Supreme Judicial Court has declared that, with respect to charitable trusts, the “legislature has determined that the Attorney General is responsible for ensuring that its charitable funds are used in accordance with the donor’s wishes.” Weaver, 425 Mass. at 275.
G.L.c. 12, §8G provides that “[t]he attorney general shall be made a party to all judicial proceedings in which he may be interested in the performance of his duties ...” A declaratory judgment proceeding is not appropriate where persons who have an interest in the matter are not before the court. Gannon v. Mayor of Revere, 401 Mass. 232 (1987).
G.L.c. 12, §8H gives the attorney general discretionary authority to investigate whether breaches of trust in the administration of a public charity have occurred or whether charitable funds have not been applied to charitable purposes.
There is a narrow exception to the general rule that only the attorney general can initiate suit alleging the misuse of charitable funds, but the exception is limited to cases where the alleged breach of the charitable trust or misuse of charitable funds directly affects a personal right of the plaintiff that is distinct from the rights of the tmst’s beneficiaries. Lopez v. Medford Community Center, Inc., 384 Mass. 163 (1981) (plaintiff members of community center had standing for the limited purpose of litigating claim that defendants interfered with their membership rights). In BSA v. Monadnock Trust, Inc., 9 Mass. L. Rptr. 68 (Worcester Super.Ct. August 13, 1998) (Fecteau, J.), private plaintiffs successfully brought a declaratory judgment suit against a charitable trust requiring the trust to transfer certain funds under cy pres principles because the court found that “since the plaintiffs allege to be the only duly authorized entity able to carry out the donor’s intent, and have, in a representative capacity already benefited from the trusts’ directives in the past, they may sustain an action on the basis that they have an interest in the funds, special and distinct from the public interest.”
The trust, or corporation, which will provide the scholarship fund that the Max Fallman Revocable Trust directs the trustee to organize will be a charitable entity, and, whether the Trust itself or a corporate vehicle when drafted and accepted, it will come under the purview of the Attorney General. Yeshiva is not a beneficiaiy of the trust if it cannot point to any personal right independent from that of the intended beneficiaries as grounds upon which to bring a declaratory judgment action.
C.Joinder of Necessary Parties
Mass.RCiv.P. 19 requires joinder of parties who are necessary and indispensable to the case, and whose absence would prevent full relief to those already parties to the case. The purpose of the rule is to provide relief to all interested parties, and to prevent multiple suits against the defendant. See Commonwealth v. Town of Andover, 378 Mass. 370 (1979). Insofar as the Attorney General is a necessary party, he should be properly joined in this judicial proceeding.
D.Trustee’s Powers and Incidental Beneficiaries
Even if the plaintiffs do not lack standing, Baylis has the discretion to administer the trust in accordance with his reasonable interpretation of its terms. A trustee is a fiduciary appointed to carry out the terms of the trust in good faith for the benefit of the trust’s beneficiaries. As a general rule, a trustee has some measure of implied discretion and may have express discretionary authority in the administration of the trust, depending on its terms. Boston Safe Deposit & Trust Co. v. Lewis, 317 Mass. 137, 141 (1944). Furthermore, the trustee’s right to fairly exercise permitted discretionary power should not be disregarded. In Bradway v. Shattuck, 325 Mass. 168, 172 (1950), the court declared that “[the judgment of the court can not be fairly substituted for the discretion of the [persons appointed by the testator], when fairly exercised, even though the court may think the decision is wrong.”
A trust’s beneficiaries are those for whose benefit the trust is administered. Incidental beneficiaries are not legal beneficiaries. “Just as a person who incidentally may profit by the performance of a contract cannot enforce the contract, so a person cannot enforce a trust merely because he may incidentally *620 benefit from the performance of the trust.” Scott on Trusts, §126 (4th ed. 2001).
However, both aspects of the joinder of the Attorney General as a necessary party and standing have been resolved by the Attorney General filing an appearance and allowing this matter to be concluded by the Court completing its findings of fact and rulings of law.
This Court notes that although there is no dispute that there was no evidence other than the fact that the Scholarship Fund by its terms shall apply to male and female graduates of Yeshiva, the notes of Baylis on December 8, indicate only “male.” The Court also notes that even though the notes reflect school of higher learning, medicine and engineering, that those words are preceeded by the word preferred which does not suggest exclusion but a preference. This Court finds that any education beyond Yeshiva is advanced and advanced studies would include college education. Section 2.3B refers to advanced studies and any school of higher learning giving examples of medicine, law, engineering, technology, etc. The “and” is not disjunctive but conjunctive and is in addition to advanced studies or college. Furthermore, engineering is normally a Bachelor of Science and not an advanced degree. Additionally, “etc.” is not normally an artful term in the drafting of trust documents.
During his lifetime, Fallman had a history with Yeshiva. He provided funds to students while they attended that school if there was a critical need. Although there was conflicting testimony as to whether or not Fallman thought Yeshiva had a college component to it, and in fact the school does not, the evidence is clear that his involvement with the school clearly indicates that there was no college component and that he knew that. This Court therefore finds that §2.3B(2) means that the Scholarship Funds available under the Fallman Trust shall be available for any male or female graduate of Yeshiva who attends a school of advanced studies meaning any college and/or any other school of higher learning for graduate or post-graduate degrees.
The Court further finds that in the event that the articles of organization are utilized for the purposes of complying with the provisions of §501(c) (3) of the Internal Revenue Code that the language in Article 2, paragraph 2 delete the language “following the attainment of a Bachelor’s Degree.” Which language shall be stricken from the proposed articles of organization.
Normally, officers of any corporation include a president, a treasurer, a clerk and sometimes a vice president and perhaps some other officers. Yeshiva is a corporation. It has officers. It is mandatory under the terms of the trust paragraph 2.3A that those officers must serve as trustees of the Scholarship Fund of Yeshiva. The trust provisions allow for a trustee to resign and if an officer chooses not to serve, they have the right to decline.
That same clause goes on further to provide that the trustees must not include any member of the Rabbi’s immediate family specifying wife, children, brother, sister or any of the spouses of the aforementioned. The Rabbi is not named but referred to generically. Fogelman is the present Rabbi and is elderly. Trust assets will exceed $800,000 when funded. It is readily apparent that the trust will survive the death of Rabbi Fogelman and perhaps one or more successor Rabbis. With that in mind, the Court finds that the reference to Rabbi in clause A simply means “the then serving Rabbi,” whether it be Rabbi Fogelman or any successor Rabbi.
Furthermore, clause A does not specifically exclude the Rabbi from serving as a trustee if he is also an officer of Yeshiva, but only his immediate family. The language is clear in that although it does not specifically exclude the then serving Rabbi, but excludes the then serving Rabbi’s immediate family members which would consist of a wife, children, brother, sister or any of the spouses of the aforementioned. This Court finds that any serving Rabbi who is also an officer of Yeshiva does qualify to serve as a trustee, but that Rabbi’s immediate family member does not.

ORDER

(1) Thomas F. Reilly, Attorney General for the Commonwealth of Massachusetts, is ALLOWED to join as a necessary party to this action.
(2) As to Yeshiva Achie Tmimim Lubavitz of Worcester, Inc., Barry Jagge, as he is the President of Yeshiva and Chaim Fishman, as he is Treasurer and Clerk of Yeshiva, the complaint is DISMISSED as they have no standing.
(3) As to Thomas F. Reilly, Attorney General for the Commonwealth of Massachusetts, the Court finds for the Attorney General and ORDERS as follows:
(a) In the event that articles of organization are utilized for purposes of complying with the provisions of §501(c) (3) of the Internal Revenue code, the language proposed “following the attainment of a Bachelor’s Degree” shall be stricken and not utilized when filing the proposed articles of incorporation.
(b) Section 2.3B(2) of the trust is construed and interpreted to mean that the Scholarship Funds available under the Fallman Trust shall be available to any male or female graduate of Yeshiva who attends a school of advanced studies, meaning any college and any other school of higher learning whether graduate or post-graduate.